**Frances BROWN, Plaintiff,**

v.

**Shirley CHATER, Commissioner of the Social Security Administration, Defendant.**

**No. 95 C 1801.**

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 29, 1996.

Thomas D. Yates, Legal Assistance Foundation of Chicago, Chicago, IL, James A. Brady, Legal Assistance Foundation of Chicago, Chicago, IL, for plaintiff.

· Jack Donatelli, United States Attorney's Office, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Plaintiff, Frances Brown, applied for a period of disability and Disability Insurance Benefits on April 1, 1992. Her claims were denied by state agency personnel. After a hearing, Administrative Law Judge ("ALJ") Donald C. Niersbach ruled that Ms. Brewer had a residual functional capacity for sedentary work not requiring use of her right arm enabling her to perform work existing in the economy. The Appeals Council denied Ms. Brewer's request for review.[1] On March 23, 1995, Ms. Brown brought the present action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Health and Human Services ("Commissioner"). Ms. Brown has filed a motion for summary judgment or, in the alternative, remand for consideration of new and material evidence. The Commissioner has filed a motion for summary judgment. For the reasons set forth below, Ms. Brown's

---

1. Ms. Brown then received a letter dated January 20, 1995 awarding her disability benefits as of June 18, 1994, the day after ALJ Niersbach issued his decision. Tr. 208–09.

motion for summary judgment is denied, her request for remand is granted, and the Commissioner's motion is denied.

### A. *Facts*

At the hearing before the ALJ,[2] Ms. Brown testified that she was born on April 12, 1952, is 5' 4½" inches tall, and weighs 153 pounds. Tr. 267, 269. Ms. Brown has a sixteen year old daughter with a learning disability who lives with her and receives Social Security Income. Tr. 217, 235, 270. She has a high school education and worked as a cashier at a grocery store from 1983 to March 27, 1992. Tr. 267, 272. Ms. Brown has not applied for a job since that date. Tr. 298.

Ms. Brown testified that she suffers persistent, stabbing pain in the joints of her right hand and wrist, and she is not able to use her right hand due to pain and numbness. Tr. 228–29, 233, 293–94. Ms. Brown stated that she also feels pain in her right shoulder, left hand and both knees. Tr. 229–31. To relieve the pain, Ms. Brown takes ibuprofen and applies heat to her right hand only. Tr. 229–31.

Although Ms. Brown is right-handed, she cannot write, turn a door knob, hold a hair brush, or open a jar with her right hand. Tr. 233, 269. She is able to use her left hand for simple grasping, picking up a pill off the table top, and, when she does not feel pain, turning a door knob to pull open a door but not opening a jar or writing very well. Tr. 234, 293. Ms. Brown testified to being able to lift five to six pounds once per day. Tr. 291–92.

Ms. Brown testified that she could sit only for an hour before her knees would hurt. Tr. 288–89. Then, she has to stand for a few minutes before sitting again. Tr. 289. She can stand for fifteen minutes and experiences pains in her legs and knees after walking one and one-half blocks. Tr. 289–90. Because Ms. Brown's knees bother her, she cannot squat and is able to climb a single flight of stairs only occasionally. Tr. 295.

Ms. Brown has difficulty falling asleep at night. Tr. 299. At 6:00 a.m. each day she awakens her daughter and makes sure she gets to school. Tr. 300–014. Ms. Brown watches television a few hours a day, reads, sometimes dusts and makes her bed, seldom cooks or sweeps, and does not do laundry, mop, vacuum, or shop for groceries. Tr. 302–04. Ms. Brown last drove five years ago and does not have a current Illinois driver's license. Tr. 268, 305. She does not date or visit friends and is visited only by family. Tr. 306–07. Ms. Brown does not attend church and is not active in any social groups. Tr. 307. Each day Ms. Brown smokes one package of cigarettes. Tr. 307.

Dr. Juan Lasa was Ms. Brown's treating physician until May, 1993. Tr. 221. In a report dated May 8, 1992, Dr. Lasa stated that his most recent examination of Ms. Brown was May 7, 1992. He reported Ms. Brown's height as 5'4" and weight as 150 pounds. Dr. Lasa diagnosed Ms. Brown as having rheumatoid arthritis with an onset date of August, 1985. Dr. Lasa found that Ms. Brown had anatomical deformity, bone destruction, and bone hypertrophy in her right fingers, wrist, and shoulder. The report observed that

> [the] joints of [right] hand and wrist ... are swollen, red, tender to pressure [with] 60% dysfunction, deformed [right] shoulder cannot be elevated to head level ... [the] fingers of the right hand showed atrophic changes.

Dr. Lasa further reported that Ms. Brown suffers from weakness and impairment in gross and fine manipulation in her right hand as well as loss of grip strength in her right hand. He concluded that "because of the (chronic) ongoing pain of [right] upper extremity, [patient's] ability to do activities of daily living is poor." Tr. 100–102.

Records from the City of Chicago Department of Health show that on March 19, 1992, Ms. Brown complained of pain in her hands—she felt more pain in her right hand than in her left—and decreased strength. The report observed "[right] wrist tender on deep pressure." The diagnosis was "[right] hand strain/sprain. [Rule out] carpal Tunnel

---

2. The Certified Administrative Record contains transcripts of hearings before ALJ Niersbach on June 3, 1993 and January 25, 1994. Tr. 213, 249.

Syndrome." Ms. Brown was treated with Motrin. Tr. 140, 151. Ms. Brown again complained of pain in both hands on April 9, 1992 and in her right arm and hand on June 18, 1992. Tr. 149, 151.

On August 24, 1993, Dr. Scott Kale examined Ms. Brown at the request of the ALJ. Tr. 215–16, 312.[3] Dr. Kale reported:

> Her physical examination reveals her to be well-developed, well-nourished and in no distress with normal vital signs. Remarkable is the reduction in the range of motion of her right shoulder which abducts to 60 [degrees]/90 [degrees] passively and actively, however, the motion as to her limit is normal, more suggestive of a rotator cuff srain than true arthritis. Her right shoulder internal rotation is reduced to ten [degrees]/40 [degrees] as is the external rotation of the right upper extremity. Her right wrist lacks twenty [degrees] of flexion and ten [degrees] of extension. Her right MCP's are kept in a flexed position, can be opened with difficulty and interestingly, show no signs of synovitis. Neither is there any evidence of atrophy, fasciculations or tremor in the right upper extremity. Her left upper extremity, low back, hips, knees and ankles are normal.

Tr. 163–64. Dr. Kale's impression was as follows:

> Based upon this examination, it is my opinion that Ms. Brown does not have rheumatoid arthritis or lupus. She may be suffering from a shoulder/hand syndrome or causalgia of the right upper extremity of approximately one year's duration. The information obtained from x-rays and from our laboratory is as follows: normal right shoulder, left ankle and questionable Keinboch's disease of the right wrist (see reports). This results in a reduction in carrying capacity to 10 lbs. and ⅓ of a day with no sitting or standing impairment. She can climb, balance, stoop, crawl and kneel. Her limits are confined to her right upper extremity. Her ANA is negative (as evidence for an inflammatory disease).

Tr. 164. Dr. Kale further reported that Ms. Brown's right arm impairment affects her ability to reach, handle, feel, push, and pull. Tr. 169. The report from Radiological Physicians, Ltd. ordered by Dr. Kale and attached to his report states that Ms. Brown has pain in her right shoulder and wrist and left ankle. Tr. 166.

After Dr. Lasa left the area in May, 1993, Ms. Brown began seeing Dr. R. Rawoof. Tr. 221. On December 14, 1993, Dr. Rawooof examined Ms. Brown and completed a physical capacities evaluation and arthritis report.[4] Tr. 180–87. In a physical capacities report, Dr. Rawoof stated that Ms. Brown suffers from severe arthritis in her right arm, right knee, and lower back (or right side of her body) and that Ms. Brown is able neither to reach above the right shoulder level nor use her right hand for pushing, pulling, or gross or fine manipulations. Tr. 181. Dr. Rawoof's arthritis report states the current diagnosis as possible rheumatoid arthritis, diagnosed ten years earlier, in Ms. Brown's right shoulder, elbow, and knee, and hands, feet, and lower back. Tr. 183. X-rays show periarticular osteoporosis in Ms. Brown's right hand and wrist. Tr. 186. Ms. Brown's range of motion in her right shoulder, elbow and wrist and her gross and fine dexterity in her right hand are abnormal. Tr. 185–6. Dr. Rawoof further reported that Ms. Brown experiences moderate to severe pain in moving her right shoulder, elbow, wrist, and hip, hands, and knee. Tr. 185.

## B. *Standard of Review*

The Social Security Act ("the Act") provides for limited judicial review of final decisions of the Commissioner. The role of this court is only to determine whether the decision of the ALJ is supported by substantial evidence in the record. 42 U.S.C. §§ 405(g), 1383(c)(3); *Wolfe v. Shalala*, 997 F.2d 321, 322 (7th Cir.1993) (citations omitted). In determining whether the Secretary's findings are supported by substantial evidence, the district court may not "reevaluate the facts, reweigh the evidence, or substi-

---

**3.** Ms. Brown testified at the hearing before the ALJ that Dr. Kale's examination of her lasted about ten to fifteen minutes. Tr. 236.

**4.** At the hearing before the ALJ, Ms. Brown testified that Dr. Rawoof's examination lasted about 1½ hours. Tr. 236.

tute [its] own judgment for that of the [Commissioner]." *Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir.1994) (citation omitted). Rather, the court must affirm a decision supported by substantial evidence in the absence of an error of law. *Herr v. Sullivan,* 912 F.2d 178, 180 (7th Cir.1990) (citations omitted); *Edwards v. Sullivan,* 985 F.2d 334, 336–37 (7th Cir.1993).

### C. *Sequential Evaluation*

■ In order to qualify for Disability Insurance Benefits, a claimant must be disabled. *Pope v. Shalala,* 998 F.2d 473, 477 (7th Cir.1993). The Act defines a "disabled" individual as one who is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. To satisfy this definition, an individual must have a severe impairment which makes her unable to perform her "previous work or any other substantial gainful activity which exists in the national economy." 20 C.F.R. § 404.1505.

The Social Security regulations require the factfinder to follow a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. The Seventh Circuit has summarized the test as follows:

> The [Commissioner] must determine in sequence: (1) whether the claimant is currently employed; (2) whether she has a severe impairment; (3) whether her impairment meets or equals one listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing any work in the national economy. Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope v. Shalala, supra,* 998 F.2d at 477–78 (citing *Schroeter v. Sullivan,* 977 F.2d 391, 393 (7th Cir.1992).

In the present case, ALG Niersbach applied the sequential evaluation and decided the case at Step Five. He found that Ms. Brown has not worked at substantial activity since March 28, 1992; that the medical evidence establishes that Ms. Brown "has complaints of pain and limitation for the right shoulder and hand and minor aches in both knees and ankles;" that Ms. Brown does not have an impairment or combination of impairments listed in or medically equal to one listed in the applicable regulations; and that Ms. Brown is unable to perform her past work as a cashier. Tr. 27–28. The ALJ then found that Ms. Brown retains the capacity for sedentary work not requiring her to use her right arm, and therefore is capable of performing a significant number of jobs in the national or local economy such as a telephone quotation clerk or telephone marketer. Tr. 28. Consequently, the ALJ found Ms. Brown was "not disabled" within the meaning of the Act and the applicable regulations. Tr. 28.

### D. *Hypothetical Question*

■ Ms. Brown argues that at the hearing before ALJ Niersbach, the ALJ erred in asking Vocational Expert Julie Bose a hypothetical question which was not supported by the medical evidence in the record and then relying on Ms. Bose's answer to the question. The ALJ and Ms. Bose engaged in the following colloquy:

> ALJ: Are there any jobs you can identify for us for a one-handed individual, as if she had lost the arm?
>
> VE: At the sedentary level there would be a limited number of telephone positions such as telephone quotation clerk, telephone marketing clerk which the individual could utilize headsets and do the occasional writing or filling out questionnaires with the left. However, they would be limited in number.
>
> ALJ: Do you have any idea how many there are of such jobs?
>
> VE: Yes, in a whole telephone marketing and telephone quotation there is approxi-

mately three to 6,000. However, with the restrictions of need for headphones and limited writing you'd be reducing that to approximately four—300 to 500 positions.

ALJ: Are there any other one-armed jobs that you could identify for me at the sedentary level?

VE: No, not sedentary and unskilled.

Tr. 241–42. Ms. Brown's attorney then cross-examined Ms. Bose:

Atty: Okay. Is your assessment taking into account Ms. Brown's statement as to the pain that she feels when she tries to use her hands?

VE: It didn't The—other description of the pain wasn't enough in terms of if it affects her concentration and her ability to complete tasks. So I did not consider it. She said she had pain, but I did not make a judgment on whether it would impair her concentration.

Atty: All right. Then hypothetically, if you had a 41–year–old woman with an unskilled work background who doesn't have use of her right hand when she's right-handed, and has complaints of constant stabbing pain in her right hand and occasional pain in her left hand, do you think that person would be able to perform the jobs that you've noted?

VE: Again, that isn't sufficient enough to evaluate how that pain affects her ability to do work tasks. There are individuals who complain of constant pain that are able to sustain a work day. It would depend on whether the pain interrupted her concentration, the pace of her work, and her productivity.

Atty: Okay. In that case I'd like to ask Ms. Brown some more questions about the pain that she feels.

ALJ: Oh, I think we've got enough on the record. I didn't ask about Ms. Brown. I asked a general question about are their [sic] jobs that exist for people. I had— didn't take in the pain quotation or Ms.

Brown's one hand being larger than the other at all as of right now. If you wish to ask her, I'm sure the answer is going to be, yes, it interferes with my persistence, concentration, and pace. I will stipulate to that—

Atty: Okay.

ALJ:—and save you the—

Tr. 242–44. Ultimately, the ALJ concluded that based on Ms. Bose's response, Ms. Brown was capable of doing the work involved in the 300–500 positions as a telephone marketer or telephone quotation clerk. Ms. Brown argues that because ALJ Niersbach stipulated that her pain would affect her ability to work and Vocational Expert Bose did not consider her pain in stating that she is able to work in telephone marketing or telephone quotation, the ALJ improperly relied on the Vocational Expert's response in determining that Ms. Brown can perform jobs available in the economy.

■ "The hypothetical question posed by the ALJ to the VE must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record." *Herron v. Shalala,* 19 F.3d 329, 337 (7th Cir.1994) (citations omitted).[5] The hypothetical question at issue did not do so, as it did not incorporate the pain Ms. Brown feels as indicated by the medical evidence. Dr. Lasa, who was Ms. Brown's treating physician prior to May, 1993, found in May, 1992 that Ms. Brown's "(chronic) ongoing pain of [her right] upper extremity" would prevent her from fully engaging in activities involved in day-to-day living. Tr. 101. Nothing in Dr. Kale's August, 1993 report suggests that Ms. Brown does not experience pain. He states that the reduction in the range of motion of Ms. Brown's right shoulder is "remarkable;" her right wrist lacks full flexion and extension; she keeps her right MCP's flexed and opens them with difficulty; and she may suffer from a "shoulder/hand syndrome or causalgia

---

5. The Court in *Herron* stated that questions not taking into account "every detail of the claimant's impairments" may not be problematic if the Vocational Expert reviews all the evidence prior to the hearing. *Herron v. Shalala, supra,* 19 F.3d at 337. In this case, Vocational Expert Bose did not testify that she reviewed the medical evidence before the hearing before the ALJ. Moreover, whether she reviewed the evidence would not be relevant in light of the fact that she admitted that her answer did not consider Ms. Brown's complaints of pain.

of the right upper extremity" or Keinboch's disease of the right wrist. Tr. 163–64. Dr. Rawoof, Ms. Brown's treating physician, examined Ms. Brown in December, 1993 and reported that Ms. Brown feels moderate to severe pain when moving her right shoulder, elbow, wrist, and hip, hands, and knee. Tr. 185. Dr. Rawoof found that Ms. Brown has severe arthritis in the right side of her body; her range of motion in her right shoulder, elbow, and wrist are abnormal; and she cannot reach above her right shoulder level or use her right hand for pushing, pulling, gross manipulations, or fine manipulations. Tr. 181.

It is unclear whether even the ALJ's evaluation of the medical evidence supports the asking of a hypothetical question not incorporating Ms. Brown's pain and making a conclusion based on the answer to such a question. During Ms. Brown's attorney's cross-examination of the Vocational Expert, in response to the attorney's statement that he wanted to ask Ms. Brown questions about the pain she feels, the ALJ stated: "If you wish to ask her, I'm sure the answer is going to be, yes, it interferes with my persistence, concentration, and pace. I will stipulate to that—" Tr. 243. I could interpret this statement in two ways—either that the ALJ stipulates that Ms. Brown would testify that her pain interferes with her persistence, concentration, and pace, or that he stipulates that Ms. Brown's pain actually interferes with her persistence, concentration, and pace. In his decision, ALJ Niersbach found that "there is no medical indication for the claimant's complaints except in the right wrist . . . .," Tr. 27, thereby indicating that he found credible Ms. Brown's complaints of pain regarding her right wrist. The ALJ further found that the medical evidence established that Ms. Brown "has complaints of pain and limitation for the right shoulder and hand and minor aches in both knees and ankles." Tr. 27. However, he also found that Ms. Brown's "subjective allegations cannot reasonably be accepted as consistent with the objective medical evidence and other evidence." Tr. 28.[6]

There is no basis in the record other than Vocational Expert Bose's testimony for the ALJ's conclusion that Ms. Brown may perform the jobs of telephone marketer or quotation clerk. Because the ALJ's question eliciting this testimony was not supported by the medical evidence in the record, I am without a basis to uphold the ALJ's determination that Ms. Brown is capable of performing jobs that are available in the economy. Accordingly, under 42 U.S.C. 405(g), I will reverse the portion of his decision finding that Ms. Brown can do the work of a telephone quotation clerk or a telephone marketer and remand for the purpose of having the Commissioner consider the objective medical evidence of Ms. Brown's pain in determining whether she is capable of performing work available in the national or local economy.

### E. *New Evidence*

 Ms. Brown argues that I should remand this case to the Commissioner under 42 U.S.C. § 405(g) for consideration of additional pieces of evidence which she contends support her claim that she has been disabled since March 28, 1992. The evidence Ms. Brown wishes the Commissioner to take into account are an undated letter from Dr. Sofia Aksentijevich of the University of Chicago Hospitals, three medical reports from Dr. Barbara Jacks, also with the University of Chicago Hospitals, of March 24, 1994, April 14, 1994, and May 12, 1994, and the Social Security Notice dated January 20, 1995 awarding her benefits as of June 18, 1994. Section 405(g) permits a court to remand the case to the Commissioner for consideration of new and material evidence which was not introduced earlier for good cause. *Bauzo v. Bowen*, 803 F.2d 917, 926 (7th Cir.1986).

 Evidence is "new" if it is "not in existence or available to the claimant at the time of the administrative proceeding." *Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir.1993) (quoting *Sullivan v. Finkelstein*,

---

**6.** The Commissioner's assertion that these findings by the ALJ were made in determining that Ms. Brown's pain complaints established that she has a severe impairment but not that she is disabled is irrelevant. Ms. Brown is not questioning the ALJ's determinations at Steps two and three. She simply notes that the ALJ credited her allegations of pain to a certain extent, though it is unclear to what extent, for the purpose of Step five.

496 U.S. 617, 626, 110 S.Ct. 2658, 2664, 110 L.Ed.2d 563 (1990)). Dr. Jacks' medical reports and the Social Security Notice came into existence after the June 3, 1993 and January 25, 1994 hearings before the ALJ. Dr. Aksentijevich's letter did as well since it notes that Ms. Brown became a patient at the University of Chicago in March, 1994 and therefore must have been written after that date. Because the events giving rise to Dr. Aksentijevich's letter, Dr. Jacks' medical reports, and the Social Security Notice occurred after the hearings before the ALJ, Ms. Brown has met her burden of showing that the evidence is new and that she had good cause for failing to incorporate the evidence into the record at the time of the hearings.[7] *Kindred v. Heckler,* 595 F.Supp. 563, 567 (N.D.Ill.1984) (Shadur, J.).[8]

As for materiality, I must determine whether it is reasonably possible that the evidence would have changed the ALJ's determination. *Sears v. Bowen,* 840 F.2d 394, 400 (7th Cir.1988). Dr. Aksentijevich's letter declares:

> Mrs. Francis Brown is a patient at the Rheumatology Clinic at the University of Chicago Medical Center since the month of March 1994. She has obviously severe aggressive arthritis affecting her right shoulder, elbow, wrist, fingers and is unable to care for herself for many of daily routine activities, without assistance.

> Therefore, since rheumatoid arthritis is a clinical diagnosis, in other words based on findings on physical examination, it is not necessary to show any other proof of her condition. . . .

Tr. 204. Because it is reasonably possible that Dr. Aksentijevich's letter could have altered the ALJ's decision especially regarding the credibility he gave to Ms. Brown's subjective complaints, the letter is material, and the ALJ is instructed to consider it on remand. Dr. Jacks' reports describe her treatment of Ms. Brown following Ms. Brown's complaints of swelling in her right hand and pain in her left knee and right ankle. Tr. 205–07. The fact that these reports indicate that Ms. Brown sought medical care to relieve various symptoms, Dr. Jacks' treatment program for those symptoms, and Ms. Brown's response to that program is sufficient to find the reports material. On remand, the ALJ must take into account Dr. Jacks' reports.

Similarly, Ms. Brown has shown that it is reasonably possible that the Social Security Notice could be material. The Notice states that based on a report from Dr. Aksentijevich (apparently the same report discussed above) and a report from Dr. Carson (which Ms. Brown asserts is not available to her)[9], the Social Security Administration has determined that Ms. Brown is disabled. Accordingly, because the Notice concludes that Ms. Brown is disabled on the grounds of Dr. Aksentijevich's report, and the report of Dr. Carson, which the ALJ will consider on remand, the Notice contains material information which could alter the ALJ's assessment of the evidence.[10]

### Conclusion

For the foregoing reasons, Ms. Brown's motion for summary judgment is denied, her request for remand is granted, and the Commissioner's motion for summary judgment is denied.

---

**7.** These items became part of the Certified Administrative Record because Ms. Brown included them with her petition to the Appeals Council to reopen its denial of Ms. Brown's request for review of the ALJ's decision.

**8.** The fact that the ALJ's decision was issued after the evidence came into existence does not affect my decision. *See id.* (Evidence arising after the ALJ hearing but before the ALJ decision was new, and therefore the plaintiff carried her burden of showing that she had good cause for not incorporating it into the prior record.)

**9.** Ms. Brown requests that on remand I should order that the Commissioner consider this report. I agree that it should be considered.

**10.** *Smith v. Secretary of Health, Education and Welfare,* 587 F.2d 857, 861–62 (7th Cir.1978), on which Ms. Brown relies, only held that the claimant had the right to present a state determination of disability to the ALJ in the hope that the ALJ would consider it and therefore is not instructive.