Sharon **GISTER**, Plaintiff,

v.

Larry G. **MASSANARI**, Acting Commissioner of Social Security, Defendant.

No. 00–C–703.

United States District Court, E.D. Wisconsin.

Sept. 21, 2001.

David G. Dreis, Milwaukee, WI, for Plaintiff.

Penelope C. Fleming, Assistant U.S. Attorney, United States Department of Justice, Office of the U.S. Attorney, Milwaukee, WI, for Defendant.

### DECISION AND ORDER REVERSING THE DECISION OF THE COMMISSIONER

GOODSTEIN, United States Magistrate Judge.

Sharon Gister appeals the decision of the Commissioner of Social Security denying her application for disability insurance benefits and supplemental security income. At the time that this case was filed, Kenneth S. Apfel was the Commissioner of Social Security. Pursuant to Rule 25(d)(1) Fed.R.Civ.P., the caption has been changed to reflect that Kenneth S. Apfel is no longer the Commissioner; his temporary successor has been substituted.

This case was originally assigned to the Honorable John W. Reynolds. After Judge Reynolds granted the plaintiff's request to proceed in forma pauperis, this case was reassigned to this court. Since the parties have consented to the exercise of full jurisdiction by a magistrate judge, this case is before this court for all further proceedings. 28 U.S.C. § 636(b); Fed. R.Civ.P. 72(b). Oral arguments were originally scheduled, and then rescheduled in this case. The second oral argument was cancelled. Instead of rescheduling oral arguments for a third date, the court will issue a written, albeit abbreviated, decision that addresses the main issues raised by the parties in this case.

On September 17, 1993, the plaintiff applied disability insurance benefits ("DIB") and supplemental security income ("SSI"), alleging that she was disabled because of Grave's disease, weakness, fatigue with exertion, muscle and tendon pain in the arms and legs, difficulty sleeping, irritability, and rapid heart rate. (Tr. 52). She pursued her claim through the hearing level with the aid of a representative. A hearing was held on August 8, 1995, before Administrative Law Judge ("ALJ") Robert L. Bartlett, Jr. (Tr. 432–69). On April 11, 1996, ALJ Bartlett issued a decision, unfavorable to the plaintiff. (Tr. 253–58). She appealed that decision to the Appeals Council, submitting new evidence of additional health problems. (Tr. 259–60). On September 23, 1997, the Appeals Council remanded the case back to ALJ Bartlett to re-evaluate the reports of certain treating physicians in consideration of the newly submitted medical evidence and further evaluation regarding her alleged mental impairment. (Tr. 326–328). On January 21, 1998, ALJ Bartlett held a second hearing. (Tr. 470–548). At that hearing, the plaintiff was represented by attorney Paul Clymer. The plaintiff, her mother, Elaine Christianson, medical expert ("ME") Dr. Donald Feinsilver, and vocational expert ("VE") John Schroeder testified. On March 20, 1998, ALJ Bartlett issued a decision, unfavorable to the plaintiff. (Tr. 17–27). After receiving additional evidence, the Appeals Council denied the claimant's request for review of ALJ Bartlett's second decision, whereupon it became the final decision of the Commissioner that the plaintiff was not entitled to benefits. (Tr. 6–8). Then, the plaintiff, now represented by attorney David Dries, filed this action for judicial review.

Disability cases are decided by reviewing the final decision of the Commissioner to ensure that it is supported by substantial evidence. *Key v. Sullivan*, 925 F.2d 1056, 1061 (7th Cir.1991). The court does not determine if the claimant is disabled or reweigh the evidence; rather, when evaluating whether substantial evidence exists to support the Commissioner's decision, the court considers the relevant evidence that a reasonable person might accept as adequate to support a conclusion, taking into account anything in the record that fairly detracts from its weight. *Young v. Secretary of Health and Human Services*, 957 F.2d 386, 388 (7th Cir.1992). Substantial evidence may be

something less than the greater weight or preponderance of the evidence. *Id.* However, the reasons for rejecting particular evidence, if uncontradicted, must be clearly articulated. *Id; Walker v. Bowen,* 834 F.2d 635, 640 (7th Cir.1987). Even if substantial evidence supports the Commissioner's findings, this court may reverse if the ALJ committed an error of law. *Pugh v. Bowen,* 870 F.2d 1271, 1274 (7th Cir. 1989).

In this case, the ALJ applied the standard five-step inquiry. At step two, the ALJ determined that the plaintiff "exhibits a technically 'severe' condition of residual effects of Graves' disease and dysthymia and somatoform disorders," thus meeting the threshold severity requirement. (Tr. 26). At step three, the ALJ determined that the plaintiff's impairments, alone or in combination, do not meet or equal any of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix I (the "Listings"). (Tr. 26). At step four, the ALJ determined that the plaintiff has the residual functional capacity ("RFC") to perform "light work activities subject to mild to moderate psychological limitations as denominated within the evidentiary record." (Tr. 26). Then, the ALJ determined that the plaintiff could not perform her past relevant work. (Tr. 26). At step five, relying on the testimony of VE Reynolds, the ALJ determined that the plaintiff could perform assembly, packaging, and cashier jobs. (Tr. 26). Then, using 20 C.F.R. § 404.1569 and § 416.969, and Rules 202.21 and 202.22, Table No. 2, Appendix 2, Subpart P, Regulations No. 4, as a framework for decisionmaking, the ALJ concluded that the plaintiff was not "disabled" for purposes of receiving benefits.

As a preliminary matter, while this case was pending before the Appeals Council, the plaintiff reapplied for SSI benefits on May 24, 1998. She reapplied again on May 15, 2000, after the Commissioner issued a final decision in this case. On October 19, 2000, after briefing in this case was completed, the Commissioner approved both of those consolidated claims, with an onset date of April 1, 1998.

In a letter to the court, plaintiff's attorney represents that the October 19, 2000, decision of the Commissioner has two effects on this case. First, the plaintiff amends her claim before this court to the closed period on September 17, 1993, until March 31, 1998. Second, the plaintiff submits that caselaw recognizes that a successful reapplication for benefits can constitute new evidence in support of remand under sentence 6 of 42 U.S.C. § 405(g), citing *Prince v. Sullivan,* 933 F.2d 598 (7th Cir.1991) and *Brown v. Chater,* 913 F.Supp. 1210 (N.D.Ill.1996). The court agrees that the closed period is the proper framework within which to view this case. As regards the new evidence, the plaintiff has not argued that it is "new" and "material," for purposes of sentence 6 of § 405(g). In light of the ultimate disposition of this case, a detailed discussion of this issue is not necessary. Because the court will remand pursuant to sentence 4, the court may direct the Commissioner to consider this evidence. *See, e.g., Campbell v. Shalala,* 988 F.2d 741, 744–45 (7th Cir. 1993).

The plaintiff submits a lengthy list of errors. In particular: (1) the ALJ committed legal error by finding that fibromyalgia lacks objective clinical findings and therefore is not a medically determinable impairment; (2) the ALJ's conclusion that the plaintiff's fibromyalgia is not supported by any objective clinical findings is not supported by substantial evidence; (3) the ALJ failed in his affirmative duty to recontact the plaintiff's treating physicians; (4) the ALJ's weighing of the treating physicians is not supported by substantial evidence; (5) the ALJ did not discuss

the appropriate factors under 20 C.F.R. § 404.1527(d); (6) the ALJ did not follow SSR 96–7p in his credibility determination; and (7) the ALJ committed legal error by concluding that a somatoform disorder cannot cause a symptom such as pain. In essence, these arguments all center on the ALJ's consideration of the plaintiff's treating physicians vis-a-vis fibromyalgia and the ALJ's credibility determination.

### Fibroymalgia

At step two, the plaintiff argues that the ALJ improperly rejected her fibromyalgia as constituting a severe impairment. This is of no moment. Because the ALJ found that the plaintiff had a severe impairment, he was required to "consider the limitation effects of all [of the plaintiff's] impairment(s), even those that are not severe, in determining [the plaintiff's] residual functional capacity." 20 C.F.R. § 404.945(e). Therefore, the issue is whether or not the ALJ considered the limitations caused by fibromyalgia in his RFC finding.

In this regard, the plaintiff contends that the ALJ erred, citing *Sarchet v. Chater*, 78 F.3d 305 (7th Cir.1996). In particular, the plaintiff argues that the ALJ ignored positive clinical objective findings of fibromyalgia. She also argues that the ALJ committed an error of law by asserting that fibromyalgia cannot constitute a medically determinable impairment because it lacks objective clinical signs. The ALJ did state that the plaintiff has "a history of 'relatively benign' fibromylagia." (Tr. 18). The court will further comment on fibromyalgia in the context of the weight that the ALJ accorded to the plaintiff's treating physicians, and the necessity for a credibility determination pursuant to SSR 96–7p.

### Consideration of Treating Physicians

■ The plaintiff argues that the ALJ was impermissibly "playing doctor," in his consideration of fibromyalgia, citing *Rohan v. Chater*, 98 F.3d 966 (7th Cir.1996). As

discussed above, the ALJ did not believe that the plaintiff had fibromyalgia. Instead, after noting that several physicians had diagnosed the plaintiff with fibromyalgia, he discounted such opinions. (Tr. 19). He states that "the diagnosis of 'fibromyalgia' rests essentially entirely upon the logic and theory that, as there are no medically demonstrable objective signs or tests results to show the existence of any medically determinable impairment, the claimant must be exhibiting fibromyalgia." (Tr. 19). Next, the ALJ goes on,

> Although several physicians have diagnosed the claimant as exhibiting a condition of fibromyalgia, a mere diagnosis in the absence of any clinically demonstrable evidence of any medically determinable condition cannot be given much weight, nor can the undersigned Administrative Law Judge consider that this represents a technically "severe" impairment.

(Tr. 19).

In support of her contention that she has fibromyalgia, the plaintiff points to numerous physicians whose reports make various references to fibromyalgia. For example, on June 12, 1997, a consulting rheumatologist, Dr. Dana Trotter, stated that the plaintiff had "Exquisite Fibromyalgia with dermatographism, skin fold tenderness and 18 out of 18 tender points." (Tr. 322). On August 17, 1995, Dr. M.E. Csuka, also a rheumatologist, stated that the plaintiff "has fibromyalgia by history and exam." (Tr. 244). Dr. Crayton's assessment was fibromyalgia. (Tr. 266). He noted that the plaintiff's "[f]ibromyalgia trigger point exam is positive" and also noted "some mild soft tissue swelling." *Id.* Contrary to the ALJ's statement, there is objective evidence; i.e. Dr. Trotter, and Dr. Crayton have provided clinically demonstrable evidence regarding trigger points. The ALJ's conclusory analysis dis-

missing fibromyalgia is not supported by substantial evidence. Moreover, as will be discussed, the ALJ's beliefs about fibromyalgia colored his credibility determination.

Furthermore in his discounting of the majority of the plaintiff's treating physicians, the ALJ usurps his role, and ignores *Sarchet.* The ALJ also ignores SSR 96–5p. That Ruling provides that the ALJ "make every reasonable effort to recontact such [treating] sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us." SSR 96–5p, 1996 WL 374183, at *2.

■ As regards Grave's disease, the ALJ stated that they "were essentially unanimous in indicating that this condition would be easily controlled with synthroid and would 'certainly' clear up entirely with treatment." (Tr. 19). Challenging this assessment, the plaintiff submits that Dr. Findling, Dr. Rapp, and Dr. Jayaprakash all found that she was limited due to Grave's disease. A review of this submission indicates that the plaintiff is essentially asking this court to reweigh this evidence. For example, Dr. Findling states that the plaintiff is unable to work until treated. (Tr. 147). When asked for a specific date, Dr. Findling responded that the plaintiff is incapacitated until April 1, 1994. (Tr. 147). On September 13, 1993, Dr. Richard Rapp diagnosed Grave's disease, and opined that the plaintiff could work eight hours per day, one day per week. (Tr. 148–49). In regard to Grave's disease, the ALJ's determination is supported by substantial evidence. (Tr. 20).

■ With respect to psychological limitations, the ALJ credited Allen Hauer, Ph. D., a clinical psychologist, who testified as a medical expert at the first hearing. (Tr. 21, 455–60). Furthermore, the ALJ gave "controlling weight" to Dr. Feinsilver, the psychiatrist who testified as a medical expert at the second hearing. (Tr. 24). A Psychiatric Technique Review Form ("PRTF") is amended to the ALJ's decision. (Tr. 28–31). As regards the "B" criteria, the ALJ found that the plaintiff had moderate restrictions in activities of daily living; moderate difficulties in maintaining social functioning; often had deficiencies in concentration, persistence, or pace; and had one or two episodes of deterioration or decompensation. (Tr. 30–31).

It is unclear what the ALJ meant when he said "controlling weight," referring to Dr. Feinsilver. Did the ALJ mean "controlling weight" as a term of art, under SSR 96–2p? Alternatively, was he using it in terms of simply weighing the evidence; i.e. he found Dr. Feinsilver more persuasive? If he meant the former, he violated SSR 96–2p which provides that in order for evidence to be entitled to "controlling weight" it must come from a "treating source." However, Feinsilver merely reviewed the medical evidence.

Referring to the medical evidence that he reviews (Tr. 504–07). Dr. Feinsilver testified that the "medical records on the whole I think suggest a dysthymic disorder and a somata form disorder." (Tr. 507). The plaintiff submits that Dr. Bjerregaard, her treating psychiatrist, diagnosed mental disorders of major depression and somatoform disorder and opined that the plaintiff could perform light work, three days per week, four hours per day. (Tr. 213). He indicated that the plaintiff's motivation, frustration toleration, responsibility for decisions, variety of tasks, reliability for continued effort, responsibility for others, stresses, pressures, and day, night, or part-time work were all limited. (Tr. 213). Despite this statement, the ALJ stated that it "is not clear upon what basis this doctor concluded that the claimant was exertionally limited to light work ac-

tivity by 'depression,' a nonexertional impairment, but notes that the primary mental health factors cited by this physician are a lack of motivation and reliability." (Tr. 20). Lack of motivation and reliability can be psychological factors. Rather than discount Dr. Bjerregaard, the ALJ should have followed the Appeals Council mandate that he seek clarification, if necessary. (Tr. 327). Given the ALJ ambiguous use of "controlling weight" and disregard for the Appeals Council's mandate, the ALJ's psychological assessment is not supported by substantial evidence.

### Credibility Analysis

In his decision the ALJ stated that, "it would be technically unnecessary to consider the claimant's subjective complaints pursuant to the criteria cited in Social Security Ruling 96–7p, insofar as the clinical evidence of record simply fails to document the existence of any medically determinable condition which would be expected to cause significant complaints of pain." (Tr. 23). Despite that statement, the ALJ makes a credibility determination in his findings. In particular, the ALJ found that, "[t]he claimant's subjective statements lack a reasonable medical basis while her primary medically determinable impairment involves the perception of persistent nonorganic disturbances for which there are no demonstrable organic findings or known physiological mechanisms; accordingly, the claimant's subjective complaints are not credible." (Tr. 26).

The plaintiff argues that the ALJ failed to follow SSR 96–7p in his credibility analysis. In response, the Commissioner contends that the ALJ evaluated the plaintiff's pain and considered the appropriate factors. As regards credibility, the ALJ stated that,

[T]he claimant's most significant problems appear to consist of her dramatic and histrionic complaints of pain, resulting in a diagnosis of somatoform disor-

der. As this diagnosis is based upon a finding that the claimant exhibits persistent nonorganic physical symptoms for which there are no demonstrable findings or known physiological mechanisms, it does not appear appropriate to evaluate the claimant's credibility at any greater length. A finding that the claimant's most significant impairment is represented by a psychological disorder which results in her presenting exaggerated and dramatic complaints of pain and physical illnesses which are ungrounded in any clinical evidence cannot be considered to contribute materially to the claimant's credibility, which the undersigned Administrative Law Judge finds to be essentially lacking.

(Tr. 23). This reasoning ignores the objective evidence of fibromyalgia, and the extent to which it could cause the plaintiff's pain. The entire credibility analysis is adversely affected by the ALJ's attitude towards fibromyalgia.

SSR 96–7p discusses credibility determinations regarding pain and other symptoms. It provides the factors that are to be discussed. Specifically, these factors are,

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain and other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, that the individual received or has received for relief of pain or other symptoms;
6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat

on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96–7p. This credibility determination is entitled to "special deference because the ALJ is in the best position to see and hear the witness and determine credibility." *Shramek v. Apfel,* 226 F.3d 809, 811 (7th Cir.2000).

Regardless of what the ALJ decision says, the Commissioner submits that the ALJ made a credibility determination, and that such is supported by substantial evidence. The Commissioner's position is not persuasive. In this case, the entire credibility analysis is affected by the ALJ's attitude towards fibromyalgia. Moreover, the ALJ's reliance on Dr. Feinsilver's observations as a basis for finding the plaintiff incredible is ineffectual. Specifically, the ALJ noted that "Dr. Feinsilver observed . . . that the claimant's physical and other chronic complaints of pain throughout her entire body significantly outnumbered any actual objective findings and that the claimant was simply engaged in dramatic actions." (Tr. 22). Even though the ALJ dismissed fibromyalgia, that was an error. At this juncture, the ALJ cannot rely on Dr. Feinsilver who is a psychiatrist to rule out pain caused by fibromyalgia. "Fibromyalgia is a rheumatic disease and the relevant specialist is a rheumatologist." *Sarchet,* 78 F.3d at 307.

Likewise, the ALJ's discussion of SSR 96–7p factors is flawed. For example, the ALJ did not discuss the medications, including narcotics that the plaintiff was or had been taking. The plaintiff testified that she was taking Ultram, Buspar, Doxepin. (Tr. 483–84). She further testified that she cannot cry due to her medications and that she gets an upset stomach almost

every time she takes her medications. (Tr. 491–92). She used a TENS unit for pain. (Tr. 481). The Commissioner contends that the ALJ noted that the plaintiff was only treated with a moderate exercise program. (Tr. 23). In regard to her daily activities, at the second hearing, the plaintiff testified that she can clean only one room a day because of pain and fatigue. (Tr. 486–87). She can ride a bike for a couple of blocks. (Tr. 487). She can only climb six steps without having to rest. (Tr. 487–88). At the first hearing, she testified that she could only climb two flights of stairs because she gets very tired. (Tr. 442). Also at the first hearing, she testified that she could walk three blocks. (Tr. 449). The Commissioner points to various items on her disability report as contradictory to her testimony. (Tr. 55). Perhaps the plaintiff got worse during the pendency of this proceeding; i.e. September 17, 1993, and second hearing was January 21, 1998? It was on that basis that she sought appeal to the Appeals Council in the first instance. In this court's opinion, the activities that the Commissioner cites are not inconsistent with the pain that the plaintiff alleges. *See, e.g., Zurawski v. Halter,* 245 F.3d 881 (7th Cir.2001). Based on the wholesale disregard for fibromyalgia and lack of meaningful discussion of the SSR 96–7p factors, to the extent that the ALJ made a credibility determination, it is not supported by substantial evidence.

In summary, the ALJ ignored fibromyalgia, improperly considered the plaintiff's treating physicians, and to the extent he made a credibility determination, it was flawed. The ALJ's decision is not supported by substantial evidence, and this case will be remanded for the closed period from September 17, 1993, to March 31, 1998. The ALJ should evaluate all of the evidence in the record regarding fibromyalgia, psychological impairments and

pain, paying particular attention to *Sarchet*, SSR 96–2p and SSR 96–5p in regard to the evaluations of the physicians' opinions. If the ALJ makes a credibility determination, he or she must discuss the applicable factors, in accordance with SSR 96–7p. The record on remand should also include the successful reapplication for benefits to the extent it may be applicable. Finally, in light of this court's comments, and the fact that the same ALJ has reviewed the record twice, it is recommended that a new ALJ be assigned on remand.

**IT IS THEREFORE ORDERED** that the plaintiff's request to reverse or remand the decision of the Commissioner is **granted**. The decision of the Commissioner is **reversed and remanded** pursuant to sentence 4 of 42 U.S.C. § 405(g). On remand, it is recommended that the Commissioner should assign a new ALJ. That ALJ should evaluate all of the evidence in the record, regarding fibromyalgia, psychological impairments and pain, paying particular attention to *Sarchet v. Chater*, 78 F.3d 305 (7th Cir.1996), SSR 96–2p and SSR 96–5p in regard to the evaluations of the physicians' opinions. If the ALJ makes a credibility determination, he or she must discuss the applicable factors, in accordance with SSR 96–7p. Finally, the record on remand should include the successful reapplication for benefits.