**Jeffrey HODES, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**No. 99 C 1704.**

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 1, 1999.

Barry Alan Schultz, Schultz & Winick, PC, Evanston, IL, for Jeffrey J. Hodes, plaintiff.

James John Kubik, United States Attorney's Office, Chicago, IL, for Kenneth S. Apfel, Commissioner of social Security Administration, defendant.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Jeffrey Hodes appeals the Commissioner of the Social Security Administration's denial of his application for Disability Insurance Benefits under the Social Security Act, 42 U.S.C. §§ 416(i), 423 (1999). This Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g) (1999), and after careful review of the administrative record, we vacate the Commissioner's decision.

### RELEVANT FACTS

On February 3, 1995, Jeffrey Hodes ("Hodes") was involved in a serious automobile accident. Hodes immediately complained of pain in his head, neck, right shoulder, lower back, right hip/leg, left rib cage, and his left lateral chest wall following the accident. (R. 110–18.) Although Hodes was in so much pain that he "scream[ed] and moan[ed] upon any [musculoskeletal] movement," x-rays and CAT scans revealed no acute injuries. (R. 130, 141–44, 151.) The hospital released Hodes with a prescription for pain medication on February 5, 1995. (R. 161.)

The trauma of this accident affects Hodes mentally and physically still. At his disability hearing, Hodes testified that the accident left him with several physical limitations: he can lift twenty-five to thirty pounds on his left side, but only three or four pounds on his right; sit for only forty to ninety minutes at a given time; stand for forty minutes to an hour if no walking is involved; and walk only about twenty feet without a cane and about a half-mile with a cane. (43–44.) He cannot bend over, stoop, or squat. (R. 44.) Hodes also informed the Bureau of Disability Determination Services ("BDDS") that he has difficulty remembering and concentrating since the accident, (R. 191), and suffers from "constant pain" that gives him "major trouble doing the simplest of things," such as bathing, (R. 90; see also R. 101).

Hodes claims that the long-term effects of the accident render him unable to work and that he is, therefore, entitled to disability insurance benefits under §§ 416(i) and 423 of the Social Security Act. The Social Security Administration ("SSA"), upon review of the evidence, has repeatedly rejected these claims.

### I. MEDICAL EVIDENCE

Hodes' persistent medical problems have been analyzed by numerous doctors, several of them at the SSA's request. These doctors' conclusions can be summarized as follows:

#### Dr. Flanagan

Dr. Flanagan, a specialist in physical medicine and rehabilitation, treated Hodes for pain in his right thigh, left buttock, left flank and chest wall, and right shoulder, and for sleeping problems. (R. 166–67.) Hodes needs a cane to walk, and Dr. Flanagan described his cane-aided gait as "antalgic ... [and] with a great deal of effort in pain." (R. 169.) After thoroughly examining Hodes, Dr. Flanagan concluded that he suffers from "diffuse soft tissue pain, post-traumatic with strain pattern to

the right shoulder, and right and low back, left flank area." (R. 169–70.)

At the request of the BDDS, Dr. Flanagan simultaneously filled out three forms analyzing Hodes' medical condition. On the BDDS' Psychiatric Report, Dr. Flanagan found that Hodes sedentary work, with a restriction on lifting 10–20 pounds. (R. 181.) However, on the Arthritic Report, Dr. Flanagan reported that Hodes lacked the ability to work because of persistent pain, (R. 182–83); and, in response to a question on the Spinal Disorders Report asking whether Hodes had the "ability to do work-related activities such as sitting, standing, moving about, lifting, carrying, handling objects, hearing, speaking, .traveling," Dr. Flanagan responded "none," (R. 185).

### Dr. Foydel

Hodes also sought treatment from Dr. Foydel, a spine-care specialist. Dr. Foydel's notes indicate that Hodes demonstrated "mild to moderate pain behavior" in the course of his physical examination. (R. 187.) Dr. Foydel concluded that "as the patient has no resources, I am unclear how a chronic pain program would be paid for but he is clearly in need of one." (R. 189.) Having learned that Hodes had stopped seeking psychological help after his last psychologist committed him involuntarily for suicidal tendencies, Dr. Foydel also referred Hodes to Dr. Mershon for continued psychiatric treatment. (R. 189.)

### Dr. Mershon

Dr. Mershon treated Hodes for his psychological complaints and symptoms, including nightmares, decreased sleep, chronic pain, depression, and for periods of inability to get out of bed. (R. 206.) Dr. Mershon diagnosed Hodes as having chronic pain syndrome and post-traumatic stress disorder. (R. 208.) On a BDDS Psychiatric Report, Dr. Mershon described Hodes as "unable to work at this time due to pain." (R. 206.) However, when the Report specifically questioned Hodes' ability to work, Dr. Mershon responded that Hodes could understand and remember instructions and respond appropriately to supervisors, although his work pressures would be tempered by his limited physical activity. (R. 208.)

### Dr. Epner

At the SSA's request, Dr. Epner examined Hodes and filled out an Internal Medicine Evaluation form. Hodes told Dr. Epner that he walks with a cane at all times and could not walk more than five or ten feet without one, has decreased short-term memory, suffers from nightmares, and has pain in his shoulder, neck, back, and leg. (R. 194–95.) Dr. Epner's physical examination confirmed that Hodes could not walk more than five or ten feet without a cane, had great difficulty getting out of a chair, and had a significant limp. (R. 195.) During Dr. Epner's back exam, Hodes experienced great pain when Dr. Epner palpitated the cervical and lumbar areas, as well as a lumbar paravertebral muscle spasm. (R. 196.) During the musculoskeletal examination, Hodes could abduct his right shoulder to 100 degrees, but had great pain while doing so, and could easily dislocate and relocate his shoulder. (R. 196.) Dr. Epner's neurological exam determined that Hodes could remember the past five presidents and perform serial seven subtraction. (R. 197.) Dr. Epner concluded that "[t]his claimant would find it nearly impossible to bend, lift, carry, or climb stairs. Indeed, walking is extremely difficult." (R. 197.)

### Dr. Dang

At the SSA's request, Dr. Dang performed a neurological exam on Hodes. Hodes told Dr. Dang that he could only walk between twenty and thirty feet without a cane. (R. 201.) Dr. Dang concluded that Hodes' "memory was intact for recent and remote events ... [and][h]is attention span was good." (R. 201.) Hodes denied having any suicidal or homicidal thoughts, hallucinations, or delusions. (R. 201.) According to Dr. Dang, "[Hodes'] thought processes were goal directed," his judgment and insight were intact, and he would

be capable of handling his funds. (R. 201–02.) Physically, Dr. Dang found limited range of motion in both the lumbar spine and the right shoulder, with Hodes able to abduct his right shoulder to ninety degrees, move his arm backwards to eighty degrees, and forward to seventy degrees. (R. 201.) The coordination examination elicited pain in the right shoulder and right leg and a sensory examination revealed an abnormality in the anterior lateral aspect of Hodes' right thigh. (R. 202.)

### Dr. Bone

As an SSA medical consultant, Dr. Bone did not examine Hodes; instead, Dr. Bone analyzed Hodes' medical records and asked Dr. Dang whether Hodes could walk fifty feet without a cane. Dr. Bone summarized his conversation with Dr. Dang, writing that Hodes "did not bring a cane with him when he came to [Dr. Dang's] office and could walk in 30 foot intervals before having to stop and lean on the wall for support." (R. 204). When Dr. Dang received this summary from Dr. Bone with a request to verify it, Dr. Dang crossed out the word "not" and wrote "error" on the summary before sending it to Dr. Bone with his signature; thus, Dr. Dang's edited version of the summary read that Hodes "did bring a cane with him . . . ." (R. 204.)

Dr. Bone assessed Hodes' Residual Physical Functional Capacity ("RFC"). Dr. Bone diagnosed Hodes with chronic pain syndrome as well as post-traumatic stress syndrome. (R. 58.) Under the heading of Manipulative Limitations, Dr. Bone checked the box "limited" next to the phrase "reaching all directions (including overhead)" and wrote "right" alongside it. (R. 212.) In response to the question asking how the activities checked "limited" are impaired, Dr. Bone wrote that right shoulder abduction was limited to ninety degrees, arm backwards to eighty degrees, and arm forward to seventy degrees. (R. 212.)

Dr. Bone concluded that Hodes did not have a disability, but noted the following exertional limitations: Hodes can occasion-ally lift twenty pounds, frequently lift ten pounds, stand and/or walk for at least two hours in an eighthour workday, sit for about six hours in an eight hour workday, and he had a limited ability to push or pull in his lower extremities because of right leg pain. (R. 58, 210.) Dr. Bone apparently questioned Hodes' credibility—he noted that one doctor found that Hodes could walk twenty to thirty feet, another doctor stated that Hodes could only walk five to ten feet without a cane, but "Dr. Dang stated that applicant stopped every 30 feet to lean on the wall for assistive support but didn't bring a cane with him." (R. 210–11.) Dr. Bone acknowledged that his conclusions differed significantly from the other treating or examining physicians, but explained the difference by stating that the others' assessments occurred prior to Dr. Dang's examination in which Hodes did not bring a cane with him. (R. 215.)

### Dr. Tomassetti

The SSA utilized the consultative services of Dr. Tomassetti to evaluate Hodes' mental capabilities. After reviewing Hodes' medical records, Dr. Tomassetti concluded that Hodes did not meet the requirements for a Listing 12.06 anxiety disorder, but did exhibit evidence of an anxiety-related disturbance. (R. 60–68.) Generally, Dr. Tomassetti found that Hodes was not significantly limited in his mental capacity; however, he did find Hodes to be moderately limited in his ability to carry out detailed instructions, maintain attention and concentration for extended periods of time, and to interact appropriately with the general public. (R. 217–18). Overall, Dr. Tomassetti concluded that Hodes had the mental capacity to perform substantial gainful activity. (R. 219.)

### Dr. White

Finally the SSA hired Dr. White as a medical consultant to assess Hodes' residual physical functional capacity. Dr. White listed the following exertional limitations:

Hodes can occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk for about six hours in an eight hour workday, and is unlimited in his ability to push and pull, except for the lifting restrictions. (R. 222.) In support of her diagnosis, Dr. White simply stated that "objective findings indicate he should be able to walk without a cane." (R. 222–23.)

## II. PROCEDURAL HISTORY

Hodes filed for disability insurance benefits on November 22, 1995, alleging that the February 3, 1995 automobile accident rendered him incapable of working. (R. 54.) The SSA denied the claim and Hodes then requested a hearing. Prior to the hearing, the administrative law judge ("ALJ") sent Hodes a letter describing the hearing process and informing him that he had the right to be represented by a lawyer or other person. (R. 30–31.) At his September 10, 1997 hearing, Hodes represented himself. (R. 34.)

In a decision issued on September 18, 1997, the ALJ denied Hodes' claims once again. The ALJ followed the five-step test for evaluating claims of disability outlined in 20 C.F.R. § 404.1520 and found that Hodes: (1) has not engaged in any disqualifying substantial gainful activity, (2) has a "severe" impairment, (3) does not meet or equal a listed impairment, (4) cannot performs his past relevant work, but (5) has the capacity to perform sedentary work in a sufficient number of jobs in the national economy to be classified as "not disabled." (R. 22, 23, 28, 29.) Hodes' appeal takes issue with the ALJ's fifth finding. (*See* Pl.'s Mem. in Supp. of his Mot. for Summ. J.)

The ALJ scattered support for the fifth finding throughout his succinct opinion. He stated that "[t]he medical evidence establishes that the claimant has chronic

pain syndrome and post-traumatic stress disorder, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4." (R. 28.) The ALJ further held that "[c]onsideration of the factors described in 20 C.F.R. 404.1529 [entitled 'How we evaluate symptoms, including pain'] also leads to a conclusion that the claimant's allegations of disabling symptoms and limitations cannot be accepted." (R. 25.) Citing Dr. Bone's report, the ALJ found the following exertional limitations:

> the claimant has the residual functional capacity to perform the requirements for work except for: lifting more than 20 pounds at a time or frequently lifting or carrying of objects weighing more than 10 pounds; standing and/or walking more than 'occasionally' (more than one-third of a workday or approximately two hours total in a workday—SSR 83–10); more than occasional pushing or pulling with the lower extremities or reaching overhead with the right arm.

(R. 24; *see also* R. 28.) The ALJ also noted that "[t]he residual functional capacity conclusions reached by the physicians employed by the State Disability Determination Services also supported a finding of 'not disabled.' "[1] (R. 26.) Citing Dr. Flanagan and Dr. Mershon's Psychiatric Reports, the ALJ stated that "[n]otably, the claimant's doctors have also asserted that he is capable of at least sedentary work. Moreover, according to the treating psychologist, he is able to understand and remember instructions and interact appropriately under supervision." (R. 26–27.)

The ALJ discredited Hodes' statements on three grounds. First, citing the reports of Doctors. Epner and Dang, the ALJ stated that Hodes "told one consultative physician that he could walk no more than five or ten feet without his cane, yet he

1. The ALJ's opinion does not indicate whether he relied upon all of the BDDS' physicians in support of this proposition or whether he simply incorporated the physicians who filled out residual functional capacity assessment forms. If the ALJ made the former assertion, it would be pure speculation with respect to the opinions of Doctors Foydel, Epner, and Dang, as these doctors did not offer such opinions.

later asserted that he could ambulate twenty to thirty feet independently." (R. 26.) The ALJ then found that "despite [Hodes'] complaints of disturbances in concentration and memory, mental status evaluations have all been totally unremarkable.... His recent and remote memory are consistently intact and he is able to perform serial 7s. His attention span is good, judgment and insight intact. His thought processes are goal directed." (R. 26) (citing the reports of Doctors Epner, Dang, and Mershon respectively). Finally, the ALJ questioned Hodes' credibility because "there is no evidence that the claimant has pursued any low-income health care options, which one might expect if he were truly unable to work due to the symptoms alleged in this case." (R. 26.)

Having determined Hodes' residual functional capacity ("RFC"), the ALJ summarily decided that a sufficient number of jobs exist in the national economy for a person of Hodes' age, education, work experience, and functional limitations. The ALJ stated the following:

> In view of the claimant's vocational characteristics and the residual functional capacity described above, and within the framework of Rule 201.28 of the Medical Vocational Guidelines, the undersigned finds that the claimant is "not disabled." Despite his limitations, he retains the capability to perform a wide range of sedentary work (Exhibit 10).

(R. 27.)

The referenced Exhibit 10, a document entitled "Vocational Assessment" and dated May 16, 1996 does little to elaborate on the ALJ's conclusion:

> [Hodes] is 36 years of age with 12 years of education. He has the residual capacity to perform only a wide range of sedentary work. He would not be able to return to any past work, but should be able to make a vocational accommodation to other work.
>
> The following jobs are unskilled and sedentary in nature. Dowel inspector (woodworking) 669.687–014: waxer (glass prod) 779.687–038: shadowgraph-scale operator (ordinance) 737.687–126.

(R. 92). The Vocational Assessment then lists the number of jobs in the glass industry, the ordnance and related accessories industry, and the woodworking industry according to the U.S. Bureau of Census, County Business Patterns, Illinois 1993. A "Report of Contact," immediately prior to the Vocational Assessment in the Record, states that:

> The Physical RFC dated 1/25/96 [Dr. White's report], shows that the claimant can perform light work but is unable to use the right arm in reaching. The claimant should never climb ladders and ropes. The claimant should avoid concentrated exposure to work requiring bimanual lifting. Some examples of jobs the claimant should be capable of performing include: Egg–Breaking–Machine Operator (canning and preserving) 521.6850114; Messenger, Copy (printing and publishing) 239.677–010; and Deliverer, Outside (clerical) 230.667–010.

(R. 91.) Citing the 1991 U.S. Bureau of the Census, County Business Patterns, Illinois, the Report then lists the number of jobs for the canning and preserving industry, the printing and publishing industry, and the clerical and kindred industries. (R. 91.)

■ Following the ALJ's decision, the Appeals Council denied Hodes' request for review on January 20, 1999.[2] Hodes then filed a timely appeal with this court claiming that the ALJ's decision was not sup-

---

2. Hodes introduced new evidence to the Appeals Council that was not before the ALJ, including statements from another doctor. While the evidence is part of the record and Hodes relies upon it in his brief, this Court does not consider it because when the Appeals Council denied review, evidence submitted for the first time to the Council cannot be considered by a district court unless the claimant alleges that the Appeals Council made a mistake of law in refusing to review the ALJ's decision. *See Diaz v. Chater,* 55 F.3d 300, 305 n. 1 (7th Cir.1995).

ported by substantial evidence. (*See* Pl.'s Compl. ¶ 7); 42 U.S.C. §§ 405(g), 1383(c)(3) (1999).

## ANALYSIS

Hodes challenges the ALJ's determination on six grounds: (1) the ALJ failed to address significant medical evidence that supported Hodes' claims; (2) the ALJ did not properly evaluate Hodes' complaints of pain; (3) the Commissioner failed to meet his burden of proof that there are jobs in the national economy that Hodes can perform; (4) the ALJ improperly discredited Hodes' testimony; (5) Hodes' waiver of counsel was invalid; and (6) the ALJ failed to properly develop the record. The Commissioner responds that each of the ALJ's findings was supported by substantial evidence, Hodes' waiver of counsel was valid, and that the ALJ properly developed the record. After analyzing the record, we find that the ALJ's decision was not supported by substantial evidence and that Hodes' waiver of counsel was invalid, therefore, we remand.

I. THE ALJ'S DECISION THAT HODES HAS THE RESIDUAL FUNCTIONAL CAPACITY TO PERFORM SEDENTARY WORK IN THE ECONOMY WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

### A. The Standard Of Review For Factual Findings

 The standard of review of the ALJ's factual findings is deferential. *Kendrick v. Shalala*, 998 F.2d 455, 458 (7th Cir.1993). Absent an error of law, the Court will uphold the ALJ's factual findings unless they are not supported by substantial evidence. *Griffith v. Callahan*, 138 F.3d 1150, 1152 (7th Cir.1998); *see also* 42 U.S.C. § 405(g) (1999). Thus, "[t]he issue before this court is not whether the claimant is disabled, but only whether substantial evidence supports the ALJ's decision." *Griffith*, 138 F.3d at 1152. Substantial evidence requires "more than a

mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ considering whether [the claimant] is disabled, we must affirm the ALJ's decision." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir.1996). As a court of review, we may not "reevaluate the facts, re-weigh evidence, or substitute our judgment for that of the Commissioner." *Griffith*, 138 F.3d at 1152.

In addition to requiring adequate supporting facts, the Seventh Circuit has "repeatedly stated that ... the ALJ 'must articulate at some minimal level his analysis of the evidence.'" *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir.1994), *quoting Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir.1988). In so doing,

[a]n ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace that path of his reasoning. An ALJ's failure to consider an entire line of evidence falls below the minimal level of articulation required.

*Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995) (citations omitted); *see also Pancake v. AMAX Coal Co.*, 858 F.2d 1250, 1255 (7th Cir.1988) ("[A]n ALJ may not selectively analyze the record to reach a desired outcome.")

 Even if enough evidence exists in the record to support the decision, we cannot uphold it if "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996). The ALJ must give substantial weight to all the medical opinions in the record, unless specific, legitimate reasons are shown for rejecting them: "A judgment favoring medi-

cal assessments A–L and discrediting M–Z, without further elucidation, is not based on substantial evidence." *Dray v. Railroad Retirement Bd.*, 10 F.3d 1306, 1311 (7th Cir.1993). The level of articulation required is heightened when there is conflicting evidence or when the ALJ rejects uncontradicted evidence. *See Amax Coal Co. v. Beasley*, 957 F.2d 324, 327 (7th Cir.1992) ("ALJs have discretion in weighing medical evidence, but they are not free to disregard uncontradicted medical opinions."); *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir.1985) (if the evidence is uncontroverted, but the ALJ chooses not to accept it, "[t]his court insists that the finder of fact explain why he rejects uncontradicted evidence").

## B. The ALJ's Findings

■ The ALJ followed the five-step inquiry set forth in the regulations for determining whether a claimant is disabled, *see* 20˙ C.F.R. §§ 404.1520(a)–(f), 416.920(a)–(f), and found that Hodes: (1) has not engaged in any disqualifying substantial gainful activity, (2) has severe impairments—chronic pain syndrome and post-traumatic stress syndrome, (3) does not have an impairment meeting or equal to one of the impairments enumerated in the regulations as a disability, and (4) lacks the ability to work in his former occupation. (R. 22, 23, 28, 29.) These findings shifted the burden to the SSA to prove step five—that Hodes could perform a sufficient number of jobs in the national economy to be classified as "not disabled." *See Knight v. Chater*, 55 F.3d 309, 313 (7th Cir.1995). The regulations provide that an ALJ's determination in step five should take into account the claimant's residual functional capacity, age, education, and work experience. Upon consideration of these factors, the claimant is disabled only if he cannot perform other work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

The ALJ analyzed Hodes' residual functional capacity and concluded that he has the following exertional and non-exertional limitations upon his ability to work:

lifting more than 20 pounds at a time or frequently lifting or carrying of objects weighing more than 10 pounds; standing and/or walking more than 'occasionally' (more than one-third of a workday or approximately two hours total in a workday—SSR 83–10); more than occasional pushing or pulling with the lower extremities or reaching overhead with the right arm.

(R. 24; *see also* R. 28.) The ALJ's residual functional capacity findings lack the support of substantial evidence for four separate, yet equally compelling reasons.

1. *In Determining Hodes' Exertional Limitations, the ALJ Relied Substantially on Dr. Bone's Erroneous Findings*

Dr. Bone's exertional limitations findings was the lone cite supporting the ALJ's exertional limitations conclusions, (*see* R. 24), despite the fact that the record clearly reflects that Dr. Bone's findings were based on his erroneous belief that Hodes walked into Dr. Dang's office without a cane. In response to a question asking him to explain the factual basis for his exertional limitations findings, Dr. Bone wrote that while Hodes "alleges he needs the use of a cane to walk," one doctor found that Hodes could walk twenty to thirty feet, another doctor stated that Hodes could only walk five to ten feet without a cane, but "Dr. Dang stated that applicant stopped every 30 feet to lean on the wall for assistive support but didn't bring a cane with him." (R.210–11.) The "factual" basis for Dr. Bone's findings is unequivocally inaccurate; Dr. Dang specifically informed Dr. Bone that Hodes had indeed used a cane while at his office. (R. 204.) Significantly, Dr. Bone also dismissed the other physicians' contrary exertional findings because they occurred before Dr. Dang's examination. (*See* R. 215); *see also Switzer v. Heckler*, 742 F.2d 382, 385 (7th Cir.1984) (reviewing physician's report did not constitute substantial evi-

dence when opposed by reports of treating physicians that were also supported by unchallenged, specific laboratory and clinical findings). Since Dr. Bone substantially relied on this material factual error, his exertional limitations conclusions cannot constitute substantial evidence because no "reasonable mind [would] accept them as adequate to support a conclusion." *Richardson*, 402 U.S. at 401, 91 S.Ct. 1420; *see also Sarchet*, 78 F.3d at 309 ("When the decision of [a] tribunal on matters of fact is unreliable because of serious mistakes or omissions, the reviewing court must reverse unless satisfied that no reasonable trier of fact could have come to a different conclusion."). Consequently, the ALJ's exertional limitations findings, which were based solely on Dr. Bone's erroneous conclusions, lacked the support of substantial evidence and warrant remand.

### 2. The ALJ's Opinion Failed to Examine Substantial Medical Evidence that Contradicted His Findings

The ALJ claimed that his finding of not disabled was supported not only by the conclusions of the BDDS physicians, but also by Hodes' treating physician: "the claimant's doctors have also asserted that he is capable of at least sedentary work." (R. 26) (citing Dr. Flanagan's Psychiatric Report for the proposition that Hodes' doctors have asserted that he is capable of sedentary work.) With respect to the conclusions of the BDDS physicians, Dr. Epner found that "[t]his claimant would find it nearly impossible to bend, lift, carry, or climb stairs" and Dr. Tomassetti concluded that Hodes is moderately limited in his ability to carry out detailed instructions, maintain attention, keep concentration, and interact appropriately with the general public. (R. 197, 217–18.) Neither Dr. Epner nor Dr. Tomassetti's findings fully align with the ALJ's functional capacity findings, and the ALJ offers no explanation as to how he thinks that they do.

Additionally, the ALJ's claim that Hodes' doctors considered him capable to perform sedentary work fails to acknowledge significant evidence to the contrary. While the ALJ cites Dr. Flanagan's Psychiatric Report as an example of this proposition, the ALJ does not discuss why he dismisses Dr. Flanagan's Arthritic Report and Spinal Disorders Report, both of which conclude that Hodes is *incapable* of working. (*See* R. 182–185.) Furthermore, while Dr. Mershon, Hodes' treating psychologist, considered him to be psychologically capable of working, he stated that Hodes "is unable to work at this time due to pain." (R. 206, 208.) Dr. Foydel, Hodes' only other treating physician, expressed no opinion as to whether Hodes could work, but noted Hodes' need for a chronic pain program. (R. 187–89.) Thus, the ALJ's statement that Hodes' own doctors consider him capable of sedentary work overlooks substantial evidence to the contrary.

■ By not fully considering the impact of the opinions of Doctors Epner, Tomassetti, Mershon, and Flanagan, the ALJ did not "give substantial weight to the medical evidence and opinions submitted, [and did not provide] specific, legitimate reasons constituting good cause ... for rejecting it." *Knight*, 55 F.3d at 313. Furthermore, by citing only to Dr. Flanagan's Psychiatric Report for the conclusion that "the claimant's doctors have also asserted that he is capable of sedentary work," (R. 26), the ALJ violated the principle that

> [a]n ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace that path of his reasoning. An ALJ's failure to consider an entire line of evidence falls below the minimal level of articulation required.

*Diaz*, 55 F.3d at 307; *see also Switzer*, 742 F.2d at 385–86 (finding the Secretary's use of only the portions of a doctor's report that favored her position to be improper). If "conflicting medical evidence is present, the SSA has the responsibility of resolving

the conflict," he cannot simply ignore it. *Stephens*, 766 F.2d at 287. But that is precisely what happened here. By relying only on the evidence supporting his conclusion and not addressing the evidence to the contrary, the ALJ failed to provide a sufficient roadmap to support his conclusions. Therefore, we must remand the case.

### 3. The ALJ Did Not Properly Evaluate Hodes' Complaints of Pain

The ALJ cites the regulation governing the evaluation of pain, 20 C.F.R. § 404.1529, and summarily states that consideration of its factors "leads to a conclusion that the claimant's allegations of disabling symptoms and limitations cannot be considered." (R. 25.) The regulations provide the process for evaluating whether subjective complaints of pain should contribute to a finding of disability—the claimant must establish a medically-determined physical or mental impairment that could reasonably be expected to produce the pain or the symptoms alleged. Once such an impairment is established, allegations about the intensity, persistence, and functional effects of pain or other symptoms must be considered in addition to the medical findings in evaluating the impairment and the extent to which it may affect the claimant's capacity for work. 20 C.F.R. §§ 404.1529, 416.929; *see also Pope v. Shalala*, 998 F.2d 473, 481–86 (7th Cir. 1993) (adopting these regulations as the standard for evaluating complaints of pain in this circuit).

The ALJ himself concluded that Hodes suffers from chronic pain syndrome, (R. 28), which meets part one of the regulation's "pain test." However, pain was not a factor in the ALJ's analysis of Hodes' work capacity and the ALJ failed to explain why the pain inherent in chronic pain syndrome does not further limit Hodes' ability to work. In addition to Hodes' testimony, the record contains statements from numerous physicians detailing how Hodes' pain affects his employment possibilities. For example, Dr. Flanagan found

Hodes unable to work because of persistent pain and stated that he does not have the ability to do work-related activities such as "sitting, standing, moving about, lifting." (R. 182–5); Dr. Mershon concluded that Hodes "is unable to work at this time due to pain," (R. 206); after noting pain in Hodes' back and shoulder, Dr. Epner stated that Hodes "would find it nearly impossible to bend, lift, carry, or climb stairs. Indeed, walking is extremely difficult." (R. 197.)

The ALJ cannot simply ignore these medical opinions; by failing to consider this medical evidence that conflicts with his determination, the ALJ's opinion "fails to build a bridge from the evidence to the conclusion and is thus analytically inadequate—in a word, unreasoned—we cannot uphold his decision." *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir.1998); *see also Knight*, 55 F.3d at 313 (ALJ's "must give substantial weight to the medical evidence and opinions submitted, unless specific, legitimate reasons constituting good cause are shown for rejecting it.") Remand is warranted because the ALJ's "failure to consider [this] entire line of evidence falls below the minimal level of articulation required." *Diaz*, 55 F.3d at 307.

### 4. The ALJ's Vocational Assessment Is Not Supported By Substantial Evidence

Problems with the vocational assessment require remand as well. The ALJ cited a vocational assessment in the record as support for his finding that "[d]espite his limitations, [Hodes] retains the capability to perform a wide range of sedentary work." (R. 27, 92.) The record is unclear as to who performed this vocational assessment and whether the assessor's conclusions are based upon all of the claimant's medically-established impairments, as required by the law in this circuit. *See Herron*, 19 F.3d at 337. Indeed, the failure to present all of the claimant's impairments to a vocational expert would be "an error which in and of itself demon-

strates a lack of substantial evidence supporting the ALJ's conclusion," *Wiggins v. Apfel,* 29 F.Supp.2d 486, 494 (N.D.Ill.1998), unless the vocational expert indicates that she reviewed the documentary evidence prior to making her determination, *see Cass v. Shalala,* 8 F.3d 552, 556 (7th Cir. 1993). Thus, if the vocational assessment was based upon the "Report of Contact" that immediately precedes it in the record, then the vocational assessment did not account for all of the limitations on Hodes' residual functional capacity that the ALJ found—such as Hodes' lifting/carrying restrictions and his inability to stand and/or walk for more than two hours total in a workday [3]—and therefore, cannot constitute substantial evidence. (*Compare* R. 91 *with* R. 24, 28.) Without further explanation, we are unable to definitively determine whether the vocational assessment itself contains errors.[4]

## II. WAIVER OF COUNSEL WAS INVALID

■ Claimants have a statutory right to counsel at disability hearings. 42 U.S.C. § 406 (1999). Claimants may waive this right, but their waiver will only be valid if the ALJ provides them with

> an explanation of the manner in which an attorney can aid in the proceedings, the possibility of free counsel or a contingency arrangement, and the limitation on attorneys' fees to twenty-five percent of past-due benefits plus required court approval of the fees.

**3.** The Report of Contact incorrectly found Hodes capable of light work, which directly conflicts with the limitations that the ALJ found on Hodes ability to stand and/or walk. (R. 91.) The vocational assessment, however, did not make this mistake. (R. 92.)

**4.** While Hodes protests the use of the medical vocational guideline's grid to determine the amount of jobs he can perform, the accuracy of the guidelines was tested during the rulemaking and ALJs can reasonably rely on them in appropriate cases rather than on the testimony of a vocational expert. *Heckler v.*

*Thompson v. Sullivan,* 933 F.2d 581, 584 (7th Cir.1991). Ensuring valid waiver of counsel is a paramount concern of the legal system, and " '[t]he information regarding the cost of an attorney is particularly relevant in disability cases where shortage of funds is likely to be an issue for the claimants.' " *See Thompson,* 933 F.2d at 585, *quoting Hawwat v. Heckler,* 608 F.Supp. 106, 109 (N.D.Ill.1984).

In this case, the ALJ sent Hodes a letter describing his right to counsel under the Social Security Act. (R. 30.) The letter stated:

> You may choose to be represented by a lawyer or other person. A representative can help you get evidence, prepare for the hearing, and present your case at the hearing. If you decide to have a representative, you should find one immediately so that he or she can start preparing your case.
>
> Some private lawyers charge a fee only if you receive benefits. Some organizations may be able to represent you free of charge. Your representative may not charge or receive any fee unless we approve it.
>
> We have enclosed the leaflet "Social Security and Your Right to Representation." We are also enclosing a list of groups that can help you find a representative.

(R. 30.)

■ This letter mirrors the letter that the court in *Young v. Apfel* found invalid for omitting the required information that there is a twenty-five percent cap on legal fees.[5] No. 3:98–CV–206RP, 1999 WL

*Campbell,* 461 U.S. 458, 470, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). Whether the case is appropriate for the use of the guidelines depends on the limitations that the ALJ finds. *See, e.g., Herron,* 19 F.3d at 336–37, *Kapusta v. Sullivan,* 900 F.2d 94, 97 (7th Cir.1989).

**5.** Apparently, the Commissioner included a leaflet in its letter to Hodes. However, the Commissioner did not offer this leaflet into evidence or suggest that it explained to the claimant the twenty-five percent limitation on fees.

325026, *7–8 (N.D.Ind. May 19, 1999); *see also Binion v. Shalala,* 13 F.3d 243, 245 (7th Cir.1994) (waiver is invalid if the Secretary fails to inform claimant of the four *Thompson* factors). Like the court in *Young,* we also find that the letter's failure to incorporate all of the *Thompson* elements renders the notice invalid. *Young,* 1999 WL 325026 at *7–8.

Although the ALJ could have remedied the letter's omission and secured valid waiver of counsel by informing Hodes of the twenty-five percent limitation during the disability hearing, he did not. The ALJ only mentioned waiver of counsel once during the hearing, stating that "I see you're here without an [sic] lawyer, did you want to proceed without a lawyer and tell me your problem," to which Mr. Hodes responded "Yes, sir." (R. 34.) This limited colloquy did not inform Hodes that if he chose to be represented by counsel, attorney's fees would be capped at twenty-five percent of past due benefits. *See Thompson,* 933 F.2d at 584–85 (finding the failure to inform the claimant of the twenty-five percent limitation leads to the conclusion that the claimant "did not knowingly and intelligently waive his right to counsel"). Thus, once again, the Commissioner has failed to satisfy the *Thompson* requirements, rendering the notice provided to the claimant invalid.

■■■■■ A finding of invalid waiver of counsel does not end our inquiry, however, because a claimant is entitled to remand only if the ALJ did not develop a full and fair record. *Binion,* 13 F.3d at 245. With an unrepresented claimant, the duty to develop a full and fair record requires that the ALJ " 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.' " *Thompson,* 933 F.2d at 585, *quoting Smith v. Secretary of Health, Educ., & Welfare,* 587 F.2d 857, 860 (7th Cir.1978). This duty is further heightened when the claimant also suffers from a mental impairment. *Thompson,* 933 F.2d at 585. Under this heightened duty, the ALJ should not act as counsel for the unrepresented claimant, but must thoroughly develop the facts so that the record indicates that the lack of counsel did not prejudice the claimant. *Thompson,* 933 F.2d at 586. On appeal, the burden falls upon the Commissioner to demonstrate that the ALJ adequately developed the record. *Binion,* 13 F.3d at 245. If the Commissioner establishes that the ALJ fully and fairly developed the record, the claimant can rebut the showing by demonstrating prejudice or an evidentiary gap. *Id.* at 245.

■■■ Seventh Circuit precedent establishes the boundaries for what constitutes the development of a full and fair record for an unrepresented claimant. At one extreme, the *Binion* court found that an ALJ who had not only obtained all of the medical and treatment records from the claimant's physicians, but also elicited detailed testimony from the claimant in all of the relevant areas during the hearing, met the standard. 13 F.3d at 245. Conversely, in *Thompson,* the court determined that both the evidentiary record and the hearing itself were deficient, necessitating remand for the unrepresented claimant. 933 F.2d at 587–88. Our case falls in the vast middle between *Binion* and *Thompson* —the ALJ collected an abundance of medical evidence and written statements from the claimant, but held a perfunctory hearing during which he failed to adequately probe into the evidence.

The transcript of the hearing indicates that the ALJ never inquired into Hodes' alleged mental and psychological problems, other than to ask whether Hodes currently sees a psychologist. In response to this lone psychological question, Hodes responded no, but then began telling how he calls his cousin, a psychologist, whenever he has an "urge," at which time the ALJ interrupted him and changed the subject. (*See* R. 40.) Hodes later revealed that he has recurrent nightmares and offered to show the ALJ a sleep journal that he had been working on with his previous psychologist. The ALJ changed the subject once

again without looking at the journal or exploring the subject further. (R. 47–48.) While the ALJ may have concluded from the medical records that post-traumatic stress syndrome did not affect Hodes' ability to work, Hodes' testimony regarding his sleep deprivation, nightmares, urges, and inability to afford extended psychological counseling should have alerted the ALJ of the need to at least develop this aspect of Hodes' case by exploring these symptoms and determining how Hodes believed that they limited his work capacity. Instead, the ALJ improperly downplayed the significance of these alleged impairments, insisting that Hodes' failure to explore low-income healthcare options demonstrated that they were insignificant.

The ALJ also did not explore two crucial ambiguities in the record, both of which proved to be detrimental to Hodes' case. The ALJ neither asked Hodes about the discrepancy between the distances that he told Dr. Epner and Dr. Dang that he could walk without a cane nor questioned Hodes about his comment that he is not currently seeing a doctor because none will take him. (R. 42–43.) Yet, in his decision, the ALJ discredited Hodes' allegations in part because of this discrepancy and his failure to pursue low-income health care options (R. 26). Dismissing Hodes' testimony as incredible critically affected the ALJ's assessment of Hodes' RFC. Although Hodes testified that he could only sit for forty to ninety minutes, and stand for up to forty minutes, the ALJ found Hodes capable of sedentary work—which requires that Hodes be able to sit and stand for at least two hours.

Finally, the transcript reveals that the ALJ did not call any witnesses during the hearing, despite the fact that testimony (or at least affidavits) from Doctors Bone and Flanagan clarifying ambiguities in their respective medical reports would have provided extremely useful factual information. Dr. Bone's findings are based, at least in part, upon the false premise that Hodes entered Dr. Dang's office without a cane.

(*Compare* R. 210, 215, *with* R. 204.) It is unclear without more evidence that Dr. Bone would have rejected the treating physicians' assessments and reached the same conclusions had he known that Hodes did use a cane while at Dr. Dang's office. Dr. Flanagan's conclusion on his Psychiatric Report that Hodes could perform sedentary work with a restriction on lifting between ten and twenty pounds, (R. 181), appears to be inconsistent with his findings on his Arthritic and Spinal Disorders Reports that Hodes cannot work, (R. 182–85). Without an explanation from Dr. Flanagan clarifying this ambiguity, one cannot conclusively determine whether Dr. Flanagan believes that Hodes can perform sedentary work. Despite these obvious ambiguities, the ALJ relied substantially on Dr. Bone and Dr. Flanagan's findings, demonstrating the importance of their opinions in this matter, and consequently, the need to clarify what those positions are.

## CONCLUSION

While we commend the ALJ's performance in collecting an abundance of medical evidence from numerous medical professionals, the ALJ failed during the hearing to resolve important ambiguities in the written record and to address the evidence contradicting his conclusion. These deficiencies, combined with the significance of a claimant's right to present his case in a full hearing and the inadequate waiver of counsel, lead us to conclude that the ALJ did not develop a full and fair record. We find that because the Commissioner did not fulfill the obligations he owes Hodes under the SSA, we must remand the case for reconsideration. We that hope that in the future a better *Thompson* letter and record are developed to guarantee an appropriate waiver of counsel for those claimants who decide to proceed on a *pro se* basis.

Plaintiff's motion for summary judgement (9–1) is granted. Defendant's motion for summary judgment (12–1) is denied.

We vacate the ALJ's decision and remand the case to the Social Security Administration for proceedings consistent with this opinion. This is a "sentence four" remand and hence a final order under *Melkonyan v. Sullivan*, 501 U.S. 89, 97–102, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991). The Clerk of the Court is directed to enter judgment pursuant to Fed.R.Civ.P. 58 in favor of Plaintiff and against Defendant.