**Justin NELSON, Plaintiff–Appellant,**

v.

**Kenneth S. APFEL, \* Commissioner, Social Security, Defendant– Appellee.**

No. 96–2242.

United States Court of Appeals, Seventh Circuit.

Argued April 7, 1997.

Decided Dec. 15, 1997.

---

\* Pursuant to Federal Rule of Appellate Procedure 43(c), we have substituted Kenneth S. Apfel for

Shirley S. Chater as the named defendant-appellee.

David W. Sutterfield (argued), Sutterfield & Johnson, P.C., Effingham, IL, for Plaintiff–Appellant.

James A. Lewis, Office of the United States Attorney, Springfield, IL, Mary Thorson (argued), Social Security Administration, Office of the General Counsel, Region V, Chicago, IL, for Defendant–Appellee.

Before POSNER, Chief Judge, FLAUM and ROVNER, Circuit Judges.

ROVNER, Circuit Judge.

Justin Nelson, an eight-year-old claimant for Supplemental Security Income ("SSI"), appeals from the denial of his application for benefits. Although we are troubled by the manner in which Justin's hearing was conducted, we find that Justin was able to present all of the relevant evidence about his disability, and was not prejudiced by any error in the hearing. Furthermore, because the decision to deny benefits was based on substantial evidence, we affirm.

## I.

Justin Nelson first applied for SSI benefits at the age of six, in March, 1992. Justin had been diagnosed as suffering from attention deficit hyperactivity disorder ("ADHD"). The Social Security Administration denied his initial application, and also denied his motion to reconsider. Justin then requested a hearing before an administrative law judge ("ALJ"), and his case was set for a hearing before ALJ Lawrence E. Shearer. By the

time of the hearing, Justin was eight years old. He was represented at the hearing by his mother, Charlene Nelson, who waived his right to an attorney.[1] The ALJ took testimony from three witnesses: Justin, Nelson, and Dr. Dennis Anderson, an expert retained by the Social Security Administration. The ALJ's examination of Justin was, not surprisingly, very cursory, lasting for about two pages of the transcript. Justin answered simple "yes/no" questions about whether he was in any special education classes, whether he was currently taking medication for his condition, whether he got into trouble at school, and whether he could write his name. When the ALJ asked if Justin knew why he was at the hearing, Justin indicated he did not know.

ALJ Shearer next questioned Charlene Nelson, and the main focus of his examination was whether Nelson had anything to add to the record regarding Justin's problems. The ALJ had made the approximately four hundred page record available to Nelson one half hour before the hearing commenced. His first question was, "What do you believe that I need to know that's not contained in the record here with regard to his problems? Now, as I see in the record he has somewhat of an attention deficit disorder problem, but he is on Ritalin?" *See* Transcript of Hearing before ALJ Lawrence E. Shearer, April 6, 1994 (hereafter "Transcript of Hearing"), at p. 8. Nelson indicated that although Justin was taking Ritalin, it was not controlling his behavior problems. The ALJ specifically questioned Nelson only about areas of concern that she raised, including Justin's academic performance, his troubles at school, and his special education classes. The ALJ

---

1. We will refer to Justin Nelson throughout our opinion as "Justin" and to his mother Charlene Nelson as "Nelson." Nelson, a non-attorney, represented Justin at his hearing. Nelson indicated at the hearing that she was unaware of Justin's right to an attorney, and stated that she did not receive any pretrial notification of rights. The ALJ then asked if she wanted to proceed without an attorney, and she agreed that she did. There is no indication in the record that Justin's right to be represented by counsel was explained in the manner we required in *Thompson v. Sullivan*, 933 F.2d 581, 584–85 (7th Cir.1991). There we stated that the ALJ should inform the unrepresented claimant of the benefits of legal repre-

sentation and the possibility of contingency arrangements. Where the claimant did not receive information about his right to counsel before the hearing and the ALJ failed to explain the benefits of counsel and the availability of contingency agreements, we held that the claimant's waiver of counsel was not knowing and voluntary, especially where the claimant suffered a mental impairment. *Id.*, 933 F.2d at 585. Justin is represented by counsel on appeal but has not raised his lack of a knowing and voluntary waiver of his right to an attorney in this Court. Therefore the issue is waived, and we must assume that Nelson's waiver of an attorney on Justin's behalf was knowing and voluntary.

then solicited further information about Justin's medical records prepared by his psychiatrist, Dr. Boshauni, and about Justin's attendance at therapy sessions with a social worker.

At this point, ALJ Shearer stopped asking specific questions, and began asking generally, "Is there anything else you'd like to tell me?" In response to these general questions, Nelson explained that Justin took other medications besides Ritalin, including a medication intended to remedy his behavior problems, and an appetite stimulant to counteract the appetite-suppressing effects of the Ritalin and behavior control medications. She also indicated that Justin had trouble sleeping, and that he had tested as mildly mentally retarded. Because other documents already in the record indicated that Justin was not mentally retarded, the ALJ inquired further and determined that Justin's therapist had made this diagnosis. He allowed Nelson two weeks to produce the results of the therapist's testing. Because Nelson reported that the therapist had misplaced the results, he stated that Nelson could submit any materials from the therapist, including her opinion as long as she provided a basis for her opinion.

This discussion was followed by many pages of ALJ Shearer asking "Anything else?" and Nelson providing information in dribs and drabs. In fact, during the course of the hearing, ALJ Shearer asked if Nelson had "anything else to add" no fewer than fifteen times in fifteen pages of testimony. To the extent the ALJ asked specific questions, he phrased them in the negative, in a cross-examining, leading style. For example, "He hasn't been expelled from any classes, has he?" Transcript of Hearing at p. 17; "He has been behaving in the classroom hasn't he?" Id.; "Well he can dress himself can't he?" Id., at p. 18. At one point during the questioning, Nelson broke down in tears and asked for a break to "rest for a minute." Id., at p. 19. The ALJ allowed the break, after which Nelson apologized, stating "I'm sorry I just feel really uncomfortable saying those kinds of things around him." The ALJ replied that he needed to ask questions, and Nelson reiterated, "It just feels very awk-

ward with him right here." Id. Although ALJ Shearer had already threatened twice to send the claimant's sister into the hallway because she was disrupting the proceedings, it apparently never occurred to him to send the claimant out into the hallway in order to spare his mother the trauma of listing all of his developmental and behavioral difficulties in front of him. In response to ALJ Shearer's repeated and impatient query "Anything else?" Nelson testified that Justin reversed letters when writing, even when writing his own name, that he was violent with his siblings, that he was unable to tell the difference between right and wrong, that he was unable to remember and execute simple, two-step instructions, that he was unable to dress himself appropriately for the weather, and that he couldn't remember the rules in simple games.

The ALJ then briefly questioned Dr. Dennis Anderson, a clinical psychologist, who had reviewed the documentary evidence and listened to the testimony of Justin and Nelson. Dr. Anderson stated he would like to know more about Justin's father, and the ALJ allowed him to directly examine Nelson on this subject. Dr. Anderson elicited that Justin's father had abandoned the family approximately four years earlier, that Justin had come to accept this after some initial difficulty, and that there were adult male role models in Justin's life. ALJ Shearer then questioned Dr. Anderson in his capacity as an expert witness, regarding whether any evidence in the record supported Nelson's claim that Justin was mildly mentally retarded. Dr. Anderson testified that the record contained no indication of mental retardation or borderline intellectual functioning. The ALJ then questioned Dr. Anderson regarding each of the six domains used to determine disability under Social Security regulations: cognitive development, communicative development, motor development, social development, personal behavior development, and concentration, persistence and pace. Dr. Anderson agreed that Justin was less than moderately impaired in cognitive development, communicative development, and social development. He testified that Justin showed no impairment in motor development, but was moderately impaired in per-

sonal behavior development and concentration, persistence and pace. Dr. Anderson testified that Justin suffered from Attention Deficit Hyperactivity Disorder ("ADHD"), and that his symptoms were between mild and moderate for the most part.

Charlene Nelson then attempted to cross-examine Dr. Anderson about the validity of Justin's earliest IQ tests in light of the fact that ADHD cannot be readily diagnosed until a child is seven or eight years old. The ALJ immediately interrupted to assert his own view that IQ does not decrease unless there is a specific cause, such as a head injury. Dr. Anderson agreed with the ALJ, who then re-examined Nelson about Justin's head injury at age two. After the ALJ questioned Dr. Anderson and Nelson regarding the issue of Justin's IQ, Nelson was allowed to resume her questioning of Dr. Anderson. After again attempting to elicit an explanation from Dr. Anderson about the decline in Justin's IQ, the ALJ again interrupted her cross-examination with his own questions about IQ. He then asked Nelson if she had any other questions for Dr. Anderson, and she declined to question him further. The ALJ then asked Nelson generally why she thought her son was entitled to benefits, and she stated her opinion that he was so impaired by ADHD that if he were an adult, he would not be capable of working. The ALJ gave Nelson two weeks to submit any additional evidence.

Although more than two weeks passed before Nelson submitted additional documents, the ALJ appears to have considered the evidence submitted to the extent it was not duplicative of evidence already received. All in all, the ALJ had considerable documentary evidence available about Justin's abilities and disabilities.[2] The ALJ found that although Justin may be regarded as having a severe impairment that limits his ability to perform age-appropriate activities, the medical evidence did not show that his conditions were severe enough to qualify for benefits. Decision, June 11, 1994, at p. 3. After reviewing the documentary evidence and the testimony at the hearing, the ALJ made several findings. He concluded that 1) Justin was eight years old; 2) he was not engaged in substantial gainful activity; 3) he had the medical conditions of attention deficit hyperactivity disorder, learning disability and mild hearing loss; 4) he did not have an impairment listed in Appendix 1, Subpart P, Regulation No. 4; 5) he did not have an impairment that was functionally equivalent to one of the impairments listed in Appendix 1; 6) he did not have an impairment which prevented him from performing a wide range of age-appropriate activities; 7) his impairments were not comparable in severity to impairments that would disable an adult; and 8) he had not been under a disability for purposes of entitlement to SSI at any time through the date of the decision. Decision, June 11, 1994, at pp. 7–8. Accordingly, the ALJ denied the request for benefits.

Nelson retained counsel and filed a request for review of the hearing decision. The Appeals Council found there was no basis under the applicable Social Security Regulations to grant the request for review and therefore denied it. Justin then appealed to the federal district court, claiming that ALJ Shearer

---

**2.** At the time he rendered his decision, ALJ Shearer had available for his review Justin's Application for Supplemental Security Income, his Medical History and Disability Report, two completed Child Development Questionnaires, a Claimant's Statement When Request for Hearing is Filed, two Disability Determination and Transmittal forms completed by a variety of medical professionals, an Audiological Evaluation Report, an individualized Education Program Form completed by a teacher, a special education teacher, a psychologist and a social worker, a Case Study Evaluation completed by the same team as above, a psychological evaluation conducted by a school psychologist, a Social Developmental Study Report completed by a school social worker, a Wechsler Intelligence Scale for Children

Test, an Iowa Test of Basic Skills, a Certificate of Child Health Examination, a School Activities Questionnaire, Psychiatric Follow-up Reports, letters and reports from Justin's therapist, an Individual Treatment Plan completed by Justin's psychiatrist and therapist, a Child Comprehensive Assessment completed by Justin's therapist, and a 14 page letter from Nelson to ALJ Shearer describing Justin's condition with supporting documentation (including some of the documents described above, as well as a Special Education Case Study Evaluation, a Motor–Free Visual Perception Test, a Stanford–Binet Intelligence Scale Test, a Woodcock–Johnson Test of Achievement, session notes from Justin's therapist, report cards, a California Achievement Test, and a sample of Justin's schoolwork).

had failed to fully and fairly develop the record, that the ALJ had improperly considered evidence outside the record, that the ALJ had ignored evidence favorable to Justin, that the ALJ had failed to adequately analyze Justin's application for benefits, and that the ALJ's findings were not supported by substantial evidence. The district court rejected most of these arguments, finding that there was sufficient evidence in the record on all the relevant issues, and the decision of the ALJ was supported by substantial evidence. The district court found that the ALJ was incorrect to consider extra-record evidence, but that this error was harmless. Justin then filed the appeal that we consider today.

## II.

■■■ On appeal, Justin again contends that the ALJ failed to fully and fairly develop the record, that he violated Justin's right to due process when he considered Justin's behavior at his sister's hearing, that he erred in failing to complete an Individualized Functional Assessment form, that he failed to properly analyze Justin's application for benefits, that he erred by not considering evidence favorable to Justin, and that his decision was not supported by substantial evidence. We must sustain the findings of the ALJ if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Scivally v. Sullivan*, 966 F.2d 1070, 1075 (7th Cir.1992). We reverse the ALJ's findings only if they are not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Scivally*, 966 F.2d at 1075. Substantial evidence is only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the ALJ. *Id.* When the Appeals Council denies review and determines that the ALJ's decision is final, we review the ALJ's determination as well as any new evidence which the Appeals Council may have determined to be immaterial. *Id.* Justin is challenging both the fact findings of the ALJ and the legal standards used by the ALJ.

We have an additional consideration in our review of Justin's case. While his case was pending before us, Congress altered the standard for children seeking Supplemental Security Income based on disability. When Justin originally filed his claim, a child was entitled to disability benefits if he or she suffered any medically determinable physical or mental impairment of comparable severity to an impairment that would disable an adult. 42 U.S.C. § 1382c(a)(3)(A) (1992), *amended by* 42 U.S.C. § 1382c(a)(3)(C) (1997). An adult, under this same scheme, is considered disabled if the adult is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). The new legislation discards the "comparable severity" standard in favor of the following definition:

> An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i). *See also Jamerson v. Chater*, 112 F.3d 1064, 1065–66 (9th Cir.1997). The Social Security Administration ("SSA") promulgated interim final rules to guide the implementation of the new statute, and these rules became effective on April 14, 1997. See Childhood Disability Provisions, 62 Fed.Reg. 6408 (1997) (to be codified at 20 C.F.R. § 404). Before these rules went into effect, the SSA issued emergency instructions indicating that "[a]ny case that would have been denied under the prior standard would also be denied under the new standard." SSA Emergency Teletype No. EM–96–131 § III(a)(5); *Jamerson*, 112 F.3d at 1066; Childhood Disability Provisions, 62 Fed.Reg. 6408 ("Under the new law, a child's impairment or combination of impairments must cause more serious impairment-related limitations than the old law and our regula-

tions required."). The interim final rules clarify that the word "severe" in the phrase "marked and severe functional limitations" is to be given its common sense meaning, distinguishing it from those occasions where the SSA uses "severe" to sometimes mean "other than minor." 62 Fed.Reg. 6409. We defer, of course, to an agency's reasonable interpretation. *Jamerson*, 112 F.3d at 1066. Keeping in mind, then, that a claimant properly denied benefits under the old standard would also be denied benefits under the new standard, we shall proceed to determine whether Justin was properly denied benefits under the old standard. *Id.*

### A.

Justin first complains that the ALJ failed to fully and fairly develop the record. He faults the ALJ's superficial questioning of himself, and the ALJ's failure to inquire of either his mother or himself regarding the six domains examined by the SSA in assessing a child's level of disability. He charges that the ALJ intimidated and chilled his mother when he began his questioning by minimizing Justin's level of impairment. *See* Transcript of Hearing, at p. 8 ("Now as I see in the record he has somewhat of an attention deficit disorder problem, but he is on Ritalin?"). Justin characterizes the ALJ's habit of generally inquiring if there is "anything else?" as an improper shifting to Justin of the burden to develop the record. Justin also notes that the ALJ frequently adopted an argumentative tone, minimizing his disability and phrasing his questions in a leading, cross-examining style. He contends that the ALJ failed to ask important follow-up questions when certain problem areas did come up, that he repeatedly and inappropriately interrupted his mother during her

cross-examination of the medical expert, and that he chilled his mother's testimony by forcing her to testify in front of Justin.

 The ALJ in a social security hearing has a basic obligation to develop a full and fair record. *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir.1991). Moreover, when the claimant is unrepresented by counsel, the ALJ has a duty to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Id.* (*quoting Smith v. Secretary of Health, Education and Welfare*, 587 F.2d 857, 860 (7th Cir.1978)). "The ALJ has this same duty to develop the record when a plaintiff is without counsel regardless of whether the plaintiff's waiver of counsel was valid." *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir.1994).[3] However, "a significant omission is usually required before this court will find that the Secretary failed to assist pro se claimants in developing the record fully and fairly." *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir.1994). In other words, the omission must be prejudicial. In *Binion*, when the plaintiff failed to point to any specific facts that were not brought out during the hearing, and failed to provide any new medical evidence, we held the plaintiff had not shown prejudice. "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Binion*, 13 F.3d at 246.

 We agree with Justin that the ALJ conducted a marginal hearing. He abdicated his responsibility to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts" when he failed to ask specific, directed questions of the claimant's mother.[4] By repeatedly asking "What else?"

---

3. When the ALJ does not obtain a valid waiver of counsel, the burden is on the Secretary to show that the ALJ fully and fairly developed the record. *Binion*, 13 F.3d at 246. Once the Secretary establishes that the ALJ fully and fairly developed the record, the plaintiff may rebut this showing by demonstrating prejudice. The plaintiff can meet this burden by showing that the ALJ failed to elicit all of the relevant information from the claimant. *Id.* As discussed above, Justin has not raised as an issue before this court whether his waiver of counsel was valid, and thus we will assume that his waiver was valid.

4. We reject the contention that the ALJ erred by failing to question Justin himself regarding the six domains. After even a few pages of testimony, it was fairly clear that the eight-year-old claimant, who admittedly suffers from an attention deficit problem, was not going to be able to provide useful or reliable information at the hearing. We will not require the ALJ to perform a useless act by requiring him to question a person who has no relevant information for the court.

to a person who was unrepresented and unfamiliar with the six domains, the ALJ demonstrated indifference to the facts that Justin's mother could provide about his condition. The ALJ's impatience with Nelson's testimony also comes across on the cold, black and white page when he phrases his questions in a leading, cross-examining style that is inappropriate in a nonadversarial social security hearing. *See Cannon v. Harris,* 651 F.2d 513, 519 (7th Cir.1981) (hearings to determine whether claimants are entitled to disability benefits are not adversary hearings). Listening to the audio tape of the hearing only confirmed our impression that Nelson conveyed the relevant facts about her son's condition in spite of the ALJ's conduct and *not because of it.* Like the district court, we too are appalled that the ALJ forced Nelson to testify about Justin's developmental and behavioral problems in front of her eight-year-old son, even after she broke down in tears and informed the ALJ of the reason for her discomfort. This is hardly the kind of hearing designed to elicit relevant information about a child claimant's condition.

Nevertheless, the ALJ did question the medical expert at length about the six domains, and allowed Nelson to submit additional information in writing. Nelson made the most of this opportunity, submitting a handwritten, 14 page letter describing Justin's condition, with supporting documentation, including some of the documents described in footnote 2 above, as well as a Special Education Case Study Evaluation, a Motor–Free Visual Perception Test, a Stanford–Binet Intelligence Scale Test, a Woodcock–Johnson Test of Achievement, session notes from Justin's therapist, report cards, a California Achievement Test, and a sample of Justin's schoolwork. Additionally, Nelson managed to provide a fairly complete picture of Justin's problems in her responses to the ALJ's vague, undirected questioning. To the extent that she was able to identify problems only generally during her testimony, she supplemented that testimony with more specific information in her follow-up letter to the ALJ. In the end, the ALJ had before him a fairly complete picture of Justin's developmental and behavioral problems, in spite of

the manner in which the hearing was conducted.

We asked the claimant at oral argument what information about Justin's condition did not come out at the hearing because of the manner in which the hearing was conducted, giving Justin an opportunity to show prejudice. Counsel responded only in generalities, stating that the ALJ did not get a global perspective of Justin, how he was actually functioning, and how his condition changed over time. We must disagree. These are all areas that were fully developed through Nelson's testimony (albeit largely unsolicited), through the medical expert, and through the documentary and supplemental evidence presented. Furthermore, Justin has not pointed to any specific facts that were not brought out at the hearing or to any medical evidence that was disregarded. *See Binion,* 13 F.3d at 246. Justin has not demonstrated prejudice by showing a significant omission from the record. *Luna,* 22 F.3d at 692. Therefore, although the ALJ conducted the hearing in a marginal manner, the relevant evidence about Justin's condition still managed to find its way into the record, and there is no reason to remand for a new hearing.

### B.

Justin's next claim is that the ALJ violated his right to due process by considering his behavior at his sister's hearing in making a determination about Justin's disability. ALJ Shearer conducted a hearing on Justin's sister's claim for SSI benefits immediately after Justin's hearing. Justin was present at his sister's hearing, and in his June 11, 1994 Decision, ALJ Shearer noted that he "observed [Justin] at the hearing to sit quietly, not only throughout his own hearing, but throughout the hearing of his sister." Decision, at p. 6. From this observation and from other evidence, the ALJ concluded that Justin was a well-behaved child, and that he acted age-appropriately.

We agree with the district court that it was improper for the ALJ to consider evidence outside the record in determining the extent of Justin's disability. *See e.g., Papendick v. Sullivan,* 969 F.2d 298, 302 (7th Cir.1992), *cert. denied,* 506 U.S. 1050, 113 S.Ct. 968, 122

L.Ed.2d 124 (1993) (district court may not consider evidence outside certified record when reviewing Medicare determination by Secretary). We also agree with the district court that this error was harmless, however. The ALJ's consideration of this extra-record evidence was incidental to his decision. In addition to Justin's behavior at his sister's hearing, the ALJ properly considered Justin's behavior at his own hearing, the expert's opinion as to Justin's level of behavioral deficiencies, an individualized functional assessment of Justin's behavior, the notes of his treating psychiatrist, the written observations of his therapist, and notes from his teacher. In the context of all of this other evidence, the ALJ's consideration of Justin's behavior at his sister's hearing was harmless error.

## C.

■ We consider next whether the ALJ erred by failing to complete an "individualized assessment form" for Justin. Justin contends that 20 C.F.R. § 416.924d(b) requires the ALJ to complete an Individualized Functional Assessment form. He analogizes this to the Psychiatric Review Technique Form that must be completed by an ALJ, citing *Stambaugh v. Sullivan,* 929 F.2d 292, 296 (7th Cir.1991). However, the psychiatric review form is expressly required under 20 C.F.R. § 416.920a. Section 416.924d(b), the relevant section here, requires only that an ALJ conduct an individualized functional assessment of a child claimant, but does not expressly require the ALJ to fill out any particular document as part of this process. Nelson does not argue that the ALJ failed to conduct the assessment, only that he failed to fill out a form. In light of section 416.924d, this was not error.[5]

## D.

■ Justin complains that the ALJ failed to consider evidence that was favorable to him, failed to properly analyze his claim, and failed to discuss all of the relevant evidence in the Decision. The Secretary's decision must be based on consideration of all relevant evidence and the reason for his conclusion must be stated in a manner sufficient to permit an informed review. *Ray v. Bowen,* 843 F.2d 998, 1002 (7th Cir.1988). Furthermore, the Secretary may not select only that evidence that favors the ultimate conclusion, but rather "must articulate at some minimum level his analysis of the evidence in cases in which considerable evidence is presented to counter the agency's position." *Id.*; *see also Scivally,* 966 F.2d at 1076 ("[t]he ALJ must minimally articulate his reasons for crediting or rejecting evidence of disability."). The ALJ should consider and discuss all medical evidence that is credible, supported by clinical findings, and relevant to the question at hand. *Garfield v. Schweiker,* 732 F.2d 605, 610 (7th Cir.1984).

■ Justin contends that the ALJ failed to consider or discuss a lengthy list of evidence that favored him. All of the allegedly ignored evidence was provided by Charlene Nelson, either through her testimony at the hearing or through her follow-up letter to the court. In our review of the ALJ's Decision, we note that he did not specifically address each point raised through Nelson's testimony. However, he specifically found "the testimony of the claimant's mother to be exaggerated. She may be motivated by her concern for her child. Nevertheless, I found the testimony to be self-serving." Normally we will not disturb such a credibility determination because of the ALJ's unique position to observe a witness. *Diaz v. Chater,* 55 F.3d 300, 308 (7th Cir.1995). Nelson offers us no reason to question the ALJ's credibility determination here. The ALJ was, of course, free to reject the testimony of a witness he found to be not credible, and that is what apparently happened here. The "ALJ need not provide a complete written evaluation of every piece of testimony and evidence." *Id.* Because we can track the ALJ's reasoning regarding this evidence, because we are certain he considered the important evidence, and because the result he

---

5. Under the new regulations, the ALJ need not conduct an individualized functional assessment of child claimants. *See* Childhood Disability Provisions, 62 Fed.Reg. 6409 ("The Commissioner was directed to discontinue the IFA for children in 20 CFR 416.924d and 416.924e (section 211(b)(2)).").

reached was consistent with his credibility determination, we find that the Decision meets the minimum articulation standard. *Id.*

### E.

 The remainder of Justin's claims together amount to a charge that the ALJ's Decision is not supported by substantial evidence. As we noted above, "substantial evidence" is evidence that a reasonable person would accept as adequate to support a conclusion. *Scivally*, 966 F.2d at 1075; *Garfield*, 732 F.2d at 607. If the record contains such support, we must affirm unless there has been an error of law. *Garfield*, 732 F.2d at 607. Nelson contends that the ALJ's finding that Justin's impairments are not comparable in severity to impairments which would disable an adult is not supported by substantial evidence.

 In reviewing the ALJ's Decision, we note that he based his ruling on Justin's medical records, the notes of his therapist, the testimony of Dr. D. Anderson, the clinical psychologist who appeared as a medical expert at the hearing, the reports of Justin's teachers, and other documentary evidence which is described in footnote 2 above. All of this evidence supports the ALJ's conclusion that although Justin suffers from a severe impairment, he does not suffer from a condition of sufficient severity to qualify him for receipt of SSI benefits. Because he did not qualify for benefits under the standard in place at the time of the ALJ's Decision, he does not qualify for benefits under the newer, stricter standard.

AFFIRMED.