Eudell L. HARRIS, Plaintiff,

v.

Jo Anne B. BARNHART,[1] Commissioner of the Social Security Administration, Defendant.

No. 00–C–0464.

United States District Court, E.D. Wisconsin.

Aug. 23, 2002.

---

1. Pursuant to Fed.R.Civ.P. 25(d)(1) and the last sentence of 42 U.S.C. § 405(g), I have amended the caption to reflect Jo Anne B. Barnhart's appointment as Commissioner of the Social Security Administration.

David F. Traver, Milwaukee, WI, for Plaintiff.

Penelope C. Fleming, Milwaukee, WI, for Defendant.

### DECISION AND ORDER

ADELMAN, District Judge.

Plaintiff Eudell L. Harris ("plaintiff") brings this action under 42 U.S.C. § 405(g) for judicial review of the decision of defendant Jo Anne B. Barnhart, Commissioner of Social Security ("defendant" or "the Commissioner"), denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act. The action was assigned for pretrial purposes to Magistrate Judge Patricia A. Gorence who recommended that the decision be affirmed. *See* 28 U.S.C. § 636(b)(1). Plaintiff filed timely objections, and the matter is before me for decision.

### I. BACKGROUND

#### A. Procedural History

Plaintiff applied for DIB and SSI on July 30, 1986, alleging substance abuse, a ruptured disc and pinched nerve. The application was initially denied; and Administrative Law Judge ("ALJ") Bartlett affirmed the denial. However, the Appeals Council determined that additional fact-finding was necessary to assess plaintiff's mental health. After further evidence was obtained, the case was reviewed by ALJ Garwal who, on March 28, 1989, found plaintiff to be disabled due to "a combination of severe impairments including substance abuse, personality disorder and residual neck and arm impairments."[2] (Tr. at 278.) In late 1994 and early 1995, the agency reevaluated plaintiff's condition and determined that he no longer suffered from a substance abuse problem. Based

---

**2.** Soon thereafter, Congress amended the Social Security program to remove alcoholism and drug addiction from the definition of "disability." *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J).

on this determination, the agency concluded that that plaintiff was not disabled as of August 1995, and that his benefits should be terminated.

Plaintiff appealed this decision and a hearing before ALJ Bartlett took place on July 9, 1997. Plaintiff appeared without counsel and testified. ALJ Bartlett concluded that plaintiff was not disabled. The ALJ found that plaintiff had mild to moderate degenerative disc disease in the spine, a history of drug and alcohol abuse and a non-severe personality disorder. The ALJ found that plaintiff's impairments did not meet or equal the severity of any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4, and found that plaintiff had the residual functional capacity to perform the full range of light work. The Appeals Council denied plaintiff's request for review making the ALJ's decision the final decision of the agency. Plaintiff now seeks judicial review.

## B. Testimony at Hearing

At the hearing before ALJ Bartlet, plaintiff appeared without counsel. The ALJ did not discuss with plaintiff his right to representation. Several days before the hearing, plaintiff had signed a form waiving his right to counsel, but the form did not contain an explanation of how an attorney might benefit him, that contingency fees were limited to twenty-five percent of any recovery or that attorneys' fees had to be approved by the court.

Plaintiff testified that he was forty-seven years old, five feet nine-and-a-half inches tall and weighed 178 pounds. He stated that his regular adult weight was 190 pounds. He indicated that he had completed the tenth grade and obtained a G.E.D. but had received no other training or schooling.

Plaintiff testified that he last worked in December 1995, at which time he drove vans and loaded boxes for the Precision Embroidery Company. His job required lifting items weighing between five and fifty pounds.

The ALJ questioned plaintiff about his neck and back pain. Plaintiff stated that he has herniated discs at the C4–C5 and C5–C6 levels, bone spurs and arthritis. He stated that these conditions prevent him from raising his arms over his head, lifting more than five pounds, walking or running quickly and cause tingling and numbness in his arms and fingers. He testified that he can walk no more than one block and that he sometimes suffers from muscle spasms in the neck and shoulders, even when sitting.

As for daily activities, plaintiff testified that he washes dishes and prepares meals, but cannot vacuum or perform any yard work. He testified that he has no hobbies, rarely sees people socially because he is unable to move about easily, and can only sleep between four and five hours per night because of pain. He testified that he sees several doctors for these conditions and that his primary care physician is Dr. McDonagh. Plaintiff stated that he has taken pain medication for his neck and back since 1984. He also described himself as "depressed." *Id.* at 534.

The ALJ said he would leave the record open to permit plaintiff to submit additional documents and ended the hearing after twenty-three minutes. After the hearing, plaintiff filed a letter stating that he was "depressed a lot of the time" and "fights depression everyday." *Id.* at 491.

## C. Medical Evidence

The medical records revealed that plaintiff has a history of back problems stemming from an industrial accident in 1980 when he was "snatched by a hitching crane" and dragged for half a block. *Id.* at 381. Given that the agency had previously determined that plaintiff was dis-

abled until 1995, the ALJ reviewed plaintiff's medical records starting from late 1993.

In late 1993 and 1994, plaintiff saw doctors generally monthly for neck and shoulder pain and was prescribed pain medication. In November 1994, plaintiff received consultative exams by Drs. Vijay Kulkarni and Dr. Jospeh Armah. Dr. Kulkarni found that "[n]eurological examination of both upper extremities [was] normal," as were muscle power, tone and coordination. *Id.* at 377. He found no muscle wasting or sensory deficit. *Id.* He advised plaintiff to continue conservative treatment and to wear a cervical collar if his neck pain was severe, and advised against surgery. *Id.* at 378. Dr. Armah noted plaintiff's subjective complaints of pain and reports of sleeping problems. Upon observation and examination, Dr. Armah found that plaintiff moved stiffly but did not "exhibit marked pain behaviors" and had a "questionable loss of pinprick sensitivity" in two fingers, but otherwise good sensory abilities and muscle strength in his upper extremities. *Id.* at 382–33. He concluded that plaintiff had "severe chronic neck discomfort related to underlying osteoarthritis, with superimposed myofascial pain." *Id.* at 383. He described plaintiff's condition as "post-traumatic in etiology" and stated that it had "evolved into a fixed chronic pain syndrome." *Id.* He recommended that plaintiff participate in a pain management program.

In April 1995, plaintiff began seeing Dr. Perry Coalmon and continued to see him several times per month for the next six months. Plaintiff reported increasingly worse neck pain and stiffness, and elbow and shoulder pain. An MRI in July 1995, showed degenerative disc disease at the C4–C6 levels causing mild central spinal stenosis at C4–C5 and, to an extent, at C5–C6. An x-ray of plaintiff's elbow was unrevealing. Dr. Coalman attempted to treat plaintiff's back and neck pain using ultrasound and electrical stimulation therapy.

In September 1995, plaintiff was examined at the Rheumatic Disease Center. Plaintiff again reported neck pain and stiffness. Tenderness at the cervical paraspinal area was found. Plaintiff was given prescriptions for Flexeril, a muscle relaxer, and Ultram, a pain reliever.

Also in 1995, plaintiff underwent a consultative psychiatric evaluation. The consulting psychiatrist, Dr. David P. Black, found that plaintiff had a history of alcohol and substance abuse, now in remission, was mildly depressed, and suffered from a personality disorder with anti-social traits.

In 1996, plaintiff began seeing Dr. Andrew McDonagh, his current treating physician. Plaintiff complained of fatigue, weakness and numbness and muscle spasms in his hands. Dr. McDonagh found plaintiff's sensation to be reduced in the arms and especially the hands and found plaintiff's muscle strength in the arms to be poor. He also found degenerative disc disease at the C4–C5 and C5–C6 levels "causing mild to moderate spinal stenosis." *Id.* at 479. He concluded that plaintiff suffered from cervical radiculopathy and recommended that plaintiff undergo neurological and neurosurgical evaluation to explore whether he should receive a laminectomy.

In August 1996, plaintiff was referred to Dr. Lawrence Sullivan who conducted a neurological consultative exam and EMG-nerve conduction velocity study of plaintiff. Plaintiff complained of increasingly worse neck pain. Dr. Sullivan found that plaintiff had limited range of motion, but good muscle strength, no muscle atrophy and no sensory abnormalities. Dr. Sullivan concluded that while plaintiff might have some radiculopathy, plaintiff's complaints of pain

were "out of proportion." *Id.* at 469. He recommended against surgery.

Also in August 1996, plaintiff began physical therapy. He was to receive ultra-sound treatments three times per week for two weeks. However, in September, plaintiff was discharged from physical therapy after only four visits because he had failed to attend his scheduled sessions.

In October, plaintiff was seen at the Mayfair Outpatient Center for a pain consultation. Plaintiff displayed severely limited range of motion. The examining physician stated that plaintiff's "initial pain stimulus is undoubtedly complicated by chronic disuse and guarding." *Id.* at 463. He recommended physical therapy to "increase [plaintiff's] mobility and reverse some of the muscle shortening and contractures". *Id.*

Plaintiff continued to see Dr. McDonagh in October, November and December of 1996 and January of 1997. Examinations showed tenderness in the cervical area and some muscle spasms. In late January, Dr. McDonagh referred plaintiff to physical therapy. However, plaintiff found the treatments to be only temporarily helpful and, thus, discontinued them after one month. In April, plaintiff saw Dr. McDonagh again. Physical examination again showed tenderness.

The medical records also contain a letter from Dr. McDonagh dated June 3, 1997 and filed on the same day as the hearing. In the letter, Dr. McDonagh states, "Eudell Harris has severe pain syndrome that prevents him from activity requiring lifting, pushing, or pulling more than five pounds." *Id.* at 490.

Plaintiff seeks to add to the record an evaluation completed by Dr. McDonagh after the hearing. In this evaluation, Dr. McDonagh addresses the bases for his statement in the June 3, 1997 letter and discusses in more detail his opinions about plaintiff's ability to work.

## II. APPLICABLE LEGAL STANDARDS

### A. Standard of Review of Magistrate's Recommendation

Where a party timely objects to a magistrate's recommendation, I conduct a de novo review of the objected to portions, 28 U.S.C. § 636(b)(1); *see United States v. Raddatz,* 447 U.S. 667, 673–76, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); and may review de novo any other aspects as I see fit. *See Delgado v. Bowen,* 782 F.2d 79, 81–82 (7th Cir.1986). If no objection is made, I review the magistrate judge's recommendation for clear error. *Johnson v. Zema Sys. Corp.,* 170 F.3d 734, 739 (7th Cir.1999). The clear error standard means that I disregard the magistrate judge's recommendation only if I am "left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co. Ltd.,* 126 F.3d 926, 943 (7th Cir.1997).

### B. Manner of Proving Disability

Under the Social Security Act, a person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Social Security regulations prescribe a sequential five-step test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. Under this test the ALJ must determine: (1) whether the claimant is presently unemployed; (2) if so, whether the claimant has a severe impairment or combination of impairments; (3) whether any of the claimant's impairments are listed by the Social Security Administration as being so severe as to preclude substantial gainful activity; (4) if not, whether the

claimant possesses the residual functional capacity ("RFC") to perform his past work; and (5) if not, whether the claimant is able to perform any other work in the national economy in light of his age, education and work experience. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir.2000); *Rucker v. Chater*, 92 F.3d 492, 494 (7th Cir.1996).

A claimant will automatically be found disabled if he makes the requisite showing at steps one through three. *See Henderson ex rel. Henderson v. Apfel*, 179 F.3d 507, 512 n. 3 (7th Cir.1999). If the claimant is unable to satisfy step three, he must then demonstrate that he lacks the RFC to perform his past work. *Id.* If he makes this showing, the burden then shifts to the Commissioner to establish that the claimant can engage in some other type of substantial gainful employment. *Id.*

### C. Applicable Provision of Section 405(g)

Section 405(g) contains two different provisions empowering a district court to remand cases to the agency for further proceedings. Under section 405(g) sentence four a district court may affirm, modify or reverse an ALJ's decision, with or without remanding the case for a rehearing. 42 U.S.C. § 405(g) (sentence four). Under section 405(g) sentence six, a court can remand a case without reaching the merits for further consideration of "new evidence" if the evidence "is material and there is good cause for the [plaintiff's] failure to incorporate such evidence into the record". *Id.* (sentence six). The parties here disagree over which provision applies. Plaintiff argues that I should consider the case under sentence four. Defendant argues that plaintiff's case rests entirely on the new evaluation by Dr.

McDonagh, which the court can only consider for the limited purpose of determining whether a remand is warranted under sentence six. However, I need not consider the evaluation in order to reach my decision in this case; thus, I will consider the case under sentence four.

### D. Standard of Review of ALJ Decision[3]

█ Review of the ALJs' decision is limited, and the ALJ's findings must be upheld if supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir.1995). Substantial evidence is such evidence as a reasonable mind would accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). In determining whether substantial evidence exists, the district court must take into account both evidence in support of a conclusion and anything that fairly detracts from its weight. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 388–89 (7th Cir.1992). The court must review all the evidence in the record, and such review " 'must be more than an uncritical rubber stamp.' " *Delgado*, 782 F.2d at 82 (quoting *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir.1984)).

█ The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and determine the case accordingly. *See Richardson*, 402 U.S. at 399–400, 91 S.Ct. 1420. A reviewing federal court may not decide the facts anew, re-weigh the evidence, or substitute its judgment for that of the ALJ. *Binion on Behalf of Binion v. Chater*, 108 F.3d 780, 782 (7th Cir.1997). Where conflicting evidence would allow reasonable minds to differ as to whether a claimant is entitled to benefits, the respon-

---

**3.** Where, as here, the Appeals Council declines to review an ALJ's decision, it is the decision of the ALJ that is the subject of

district court review. *Eads v. Sec'y of Department Health & Human Servs.*, 983 F.2d 815, 817 (7th Cir.1993).

sibility for that decision falls on the ALJ. *Id.*

 However, if the ALJ commits an error of law, reversal is required without regard to the volume of evidence in support of the factual findings. *Id.; see also Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir.1989). The ALJ's decision must also demonstrate the path of her reasoning, and the evidence must lead logically to her conclusion. *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir.1996). "Even if enough evidence exists in the record to support the decision, [the court] cannot uphold it if 'the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.'" *Hodes v. Apfel*, 61 F.Supp.2d 798, 806 (N.D.Ill.1999) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996)). Finally, "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Rohan*, 98 F.3d at 970.

## III. DISCUSSION

### A. ALJ's Decision

In the present case, the ALJ concluded that plaintiff's claim failed at step five. He concluded that plaintiff has mild to moderate degenerative disc disease involving the spine, a history of substance abuse, now in remission, and a non-severe personality disorder with anti-social features. The ALJ concluded that plaintiff's conditions have improved since March 1989 when he was found disabled due in part to substance abuse. The ALJ further concluded that plaintiff's current impairments do not meet the disability criteria and that plaintiff's complaints of limitation and pain were "exaggerat[ed]" (Tr. at 31, finding 7). The ALJ then found that plaintiff was unable to perform his past work but possessed the RFC to perform the full range of light work. In making the final determination, the ALJ stated that Rules 202.17

and 202.20 of the Medical–Vocational Guidelines compelled his conclusion.

### B. Analysis of ALJ's Decision

#### 1. Waiver of Counsel

 Plaintiff first contends that the ALJ erred in not fully explaining to plaintiff the availability and benefits of counsel before accepting plaintiff's waiver. "A claimant has a statutory right to counsel at disability hearings." *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir.1991) (citing 42 U.S.C. § 406; 20 C.F.R. § 404.1700). However, the claimant can waive this right "if given sufficient information to enable him to intelligently decide whether to retain counsel or proceed pro se." *Id.* (internal citations and quotation marks omitted). The ALJ must explain "(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees." *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994).

 In the present case, the ALJ never discussed the right to counsel with plaintiff. Magistrate Judge Gorence discussed this matter in some detail in her recommendation and concluded that the waiver of counsel was invalid. Neither party objected to this conclusion. I do not find that it was clearly erroneous; thus, I adopt Magistrate Judge Gorence's recommendation in this regard.

#### 2. Failure to Fully and Fairly Develop the Record

 An invalid waiver of counsel requires the court to remand the case unless the Commissioner can show that the ALJ "fully and fairly [developed the record by] ... prob[ing] the claimant for

possible disabilities and uncover[ing] all of the relevant evidence." *Binion v. Shalala,* 13 F.3d at 245; *see Thompson,* 933 F.2d at 585 (stating that the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts") (internal citations and quotation marks omitted). The ALJ always has this duty when dealing with an unrepresented claimant. *Binion v. Shalala,* 13 F.3d at 245; *Nelson v. Apfel,* 131 F.3d 1228, 1235 (7th Cir.1997). However, when the waiver of counsel is invalid, the Commissioner bears the burden of proving that the duty was met. *Binion v. Shalala,* 13 F.3d at 245. If the Commissioner makes the required showing, the plaintiff can then rebut this showing by offering evidence of "prejudice or an evidentiary gap." *Id.*

In *Binion v. Shalala,* the court found that the ALJ had fully developed the record where the ALJ questioned plaintiff about medical evidence in her file, her daily activities and ability to perform various tasks, a friend testified in plaintiff's favor, the ALJ requested clarifying information from plaintiff's doctors and left the record open to allow plaintiff to submit medical reports after the hearing date. *Id.* at 245–46; *see also Ferguson v. Massanari,* No. 01–C–1302, 2002 WL 472291, *9 (N.D.Ill. Mar. 27, 2002) (finding record fully and fairly developed where ALJ questioned the plaintiff in detail, considered medical records and medical opinions and specifically questioned a psychiatrist about the effect of plaintiff's mental impairment on his ability to work). However, in *Thompson,* the court found that the ALJ did not fully and fairly develop the record when he failed to question plaintiff about alleged mental impairments or obtain expert testimony in key areas. *Thompson,* 933 F.2d at 586; *see also Henderson v. Barnhart,* 205 F.Supp.2d 999, 1010 (E.D.Wis.2002) (finding that ALJ failed to fully and fairly develop the record when he conducted a short, perfunctory

hearing and asked no questions about one of the alleged basis for plaintiff's inability to work); *Hodes,* 61 F.Supp.2d at 811–12 (finding that ALJ failed to fully and fairly develop the record where he failed to question plaintiff about alleged psychological problems and failed to explore critical ambiguities in the record).

As I have said before, "[t]he problem of claimants not being properly advised of their right to counsel arises all too frequently. . . . While ALJs may conscientiously attempt to fulfill their duties to develop the record, even the most thorough ALJ is no substitute for an advocate. An attorney will likely know beforehand the areas crucial to the claimant's case and can ensure that questioning in those areas is detailed, and that the record (both testimonial and medical) is complete. Therefore, federal courts must carefully scrutinize records developed without counsel." *Henderson v. Barnhart,* 205 F.Supp.2d at 1010.

Defendant here has not met her burden of showing that the ALJ fully and fairly developed the record. Although the ALJ's decision recounts plaintiff's medical records in some detail, the ALJ's questioning of plaintiff at the hearing was deficient. The hearing was brief, lasting twenty-three minutes; and the ALJ made no inquiry into several areas. In addition, in key areas that he did cover, his questioning was less than searching.

First, the ALJ made no inquiry into plaintiff's alleged mental impairments. At the hearing and in his letter to the ALJ afterwards, plaintiff described himself as "depressed" and indicated that he rarely engaged in social activities. (Tr. at 491, 534.) In addition, the record contained the report from Dr. Black stating that plaintiff suffered from depression and a personality disorder with anti-social features. However, the ALJ asked plaintiff no questions

about his alleged depression, such as whether or how plaintiff's depression affects his ability to conduct his daily activities or how it interacts with his physical impairments. The issue of plaintiff's personality disorder never came up at the hearing at all. The ALJ took no steps after the hearing to recontact plaintiff or his primary doctor to try to fill-in these gaps. As a result, the record is not fully or fairly developed on the issue of plaintiff's mental impairments. *See Thompson,* 933 F.2d at 586 (remanding case where ALJ failed to question plaintiff about alleged mental impairments and failed to obtain expert testimony).

Defendant argues that during plaintiff's consultative exam with Dr. Black in 1995, plaintiff stated that he believed that the basis for his disability was neck pain, not mental impairments. Thus, defendant argues, the ALJ was not required to question plaintiff about his mental health. However, defendant cannot rely on plaintiff's statements to Dr. Black more than two years before the hearing to excuse the ALJ's limited questioning in this area. Plaintiff had previously been found disabled due in part to a personality disorder; and, at the hearing itself, plaintiff testified about depression, indicating that plaintiff believed that his mental health was relevant to the issue disability. In light of this testimony and in light of the agency's prior decision, the ALJ had a duty to inquire into plaintiff's mental health to fully and fairly develop the record.

Second, the ALJ failed to develop the record on the nature and extent of plaintiff's household activities, a highly relevant area given that plaintiff had alleged disability due in part to severe pain and that the ALJ relied on evidence of plaintiff's household activities to determine that he could work. The Seventh Circuit has instructed that if a claimant indicates that pain is a significant factor in his or her inability to work, "the ALJ must obtain detailed descriptions of claimant's daily activities by directing specific inquiries about the pain and its effects to the claimant." *Luna v. Shalala,* 22 F.3d 687, 691 (7th Cir.1994) (internal citations omitted). Here, the ALJ asked plaintiff whether he performs housework. Plaintiff said, "I do my little housework. Try to do the housework. It takes me all day to clean.... I don't vacuum or nothing like that. I do dishes and I try to prepare something to eat.... I sit down and write out the bills and what have you." (Tr. at 530.) The ALJ asked no follow-up questions even though plaintiff's testimony did not include a detailed description of even one of his household activities. For example, his testimony does not indicate how many dishes plaintiff washes or how often he washes them and for how long. It does not indicate what he prepares to eat or whether he prepares food only for himself or for others. Such details are vital to a determination of whether plaintiff's daily activities demonstrate his ability to work and are required in order to comply with the Seventh Circuit's rule.

More generally, the testimony does not address questions of consistency and pace. Being able to work requires being able "to perform sustained work activities in an ordinary work setting ... 8 hours a day, for 5 days a week". *See* SSR 96–8p. Based in part on plaintiff's daily activities, the ALJ concluded that plaintiff could meet this requirement. However, the ALJ failed to obtain testimony about how much time plaintiff spends performing household chores or whether he can work at a consistent pace. For example, plaintiff stated that it takes him "all day to clean"; but it is unclear whether plaintiff meant that he can consistently perform housework for the entire day, or whether he works so slowly and must take so many breaks that it takes him a day to accom-

plish a task. Such clarification is essential to the determination of whether plaintiff retains the RFC to work. Thus, the ALJ left the record undeveloped. And his failure to obtain detailed and clear testimony in this area is particularly troubling given that he relied on evidence of plaintiff's daily activities to find that plaintiff was not credible and that his complaints of pain were exaggerated.

In addition to plaintiff's testimony at the hearing, the ALJ had before him medical records and Social Security Administration forms, some of which contained evidence of plaintiff's daily activities. However, the presence of this evidence, most of which dated from two years before the hearing, did not permit the ALJ to forgo his duty to "scrupulously and conscientiously ... explore for all relevant facts", *Nelson*, 131 F.3d at 1235 (internal citation and quotation marks omitted), by obtaining detailed testimony. The Commissioner has not met her burden.

Third, the ALJ made no inquiry about the effects of plaintiff's pain medication on his ability to work. The ALJ noted in his decision and plaintiff testified in the hearing that he takes pain relievers. Indeed, the ALJ concluded that plaintiff had become addicted to pain relievers. However, despite evidence of plaintiff's daily prescription drug use, the ALJ asked no questions about what secondary effects the medications have on plaintiff or how the pain medication affects plaintiff's ability to conduct his daily activities. The effects of pain medication could seriously undermine plaintiff's ability to work for a eight-hour day; thus, it was imperative that the ALJ inquire into this area. *See Moore v. Apfel*, No. 98–C–5448, 1999 WL 261927, at * 1–2 (N.D.Ill. Apr. 26, 1999) (remanding case where ALJ failed to fully explore side effects of medication and effects of plaintiff's conditions).

Fourth, the ALJ failed to elicit evidence about the effects of plaintiff's sleeping problems on his ability to work. Plaintiff testified that he can only sleep four to five hours a night because of neck pain. However, the ALJ asked no questions about whether or how this lack of sleep affects plaintiff's ability to concentrate or perform daily activities. Such evidence would be highly relevant to whether or not plaintiff could work eight hours a day, five days a week. Thus, the record is lacking in this area as well.

Finally, the ALJ failed to fully develop the record with regard to the opinion evidence from plaintiff's treating physician, Dr. McDonagh. Dr. McDonagh submitted a two-sentence letter stating that plaintiff could lift, push and pull no more than five pounds. Dr. McDonagh's letter offered no explanation of the bases for his opinion; and the ALJ rejected it, in part, for this reason. As a treating source, Dr. McDonagh's opinion was presumptively entitled to significant weight. SSR 96–2p. Title 20 C.F.R. § 404.1512(e)(1) instructs that when deciding whether or not a claimant is disabled, the agency must recontact a treating source when his or her opinion "contains a conflict or ambiguity that must be resolved, ... does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." However, the ALJ did not recontact Dr. McDonagh to attempt to ascertain the bases for the opinion; he simply rejected it even though Dr. McDonagh's statement was highly probative of plaintiff's ability to work and plaintiff was unrepresented by counsel. Thus, the ALJ failed to fully develop the record in this area as well.

█ For the foregoing reasons, I conclude that the ALJ failed to fully and fairly develop the record. Thus, the action must be remanded to the agency for further

proceedings.[4] *See Hodes,* 61 F.Supp.2d at 811 (remanding case where ALJ collected an abundance of medical evidence "but held a perfunctory hearing during which he failed to adequately probe into the evidence"); *Young v. Apfel,* No. 99–C–1704, 1999 WL 325026, at *9 (N.D.Ind. May 19, 1999) (remanding case where, although ALJ received and reviewed extensive medical records, he failed to inquire in any depth about claimant's condition, medication, or physical capabilities).

■■■ Plaintiff asks that I recommend to the administration that it reassign plaintiff's case to a different ALJ on remand. In light of the paucity of evidence collected at the hearing and given that ALJ Bartlett has already considered plaintiff's claim twice, I will make such a recommendation.[5] *See Gister v. Massanari,* 189 F.Supp.2d 930, 938 (E.D.Wis.2001) (recommending that administration assign case to different ALJ on remand where ALJ failed to address evidence in key areas and had already considered plaintiff's claim twice).

## IV. CONCLUSION

For the foregoing reasons I decline to follow the recommendation of the magistrate judge; and

**IT IS HEREBY ORDERED THAT,** pursuant to 42 U.S.C. § 405(g) (sentence four), the decision of the Commissioner is **REVERSED** and the matter is **RE-MANDED** to the administration for further proceedings consistent with this opinion.

**FURTHER, IT IS RECOMMENDED THAT** the administration assign plaintiff's case to a different ALJ for consideration on remand.

4. Because I conclude that the case must be remanded to allow a full and fair development of the record, I need not reach the plaintiff's other objections.

5. In addition, ALJ Bartlett improperly relied on his own unsupported medical opinions about plaintiff's conditions. It is well established that although ALJs need not accept every medical opinion in the record, they must not "succumb to the temptation to play doctor and make their own independent medical findings." *Rohan,* 98 F.3d at 970; *Herron v. Shalala,* 19 F.3d 329, 334 n. 10 (7th Cir.1994). Here, ALJ Bartlett concluded that plaintiff had become addicted to prescription drugs, that Dr. McDonagh's treatment of plaintiff was inappropriate for plaintiff's condition and that plaintiff's lack of muscle atrophy was proof that his pain was not as severe as he indicated. However, no medical expert had offered his or her opinion as to any of these matters; the ALJ made his own medical findings. These errors offer another reason for recommending that the administration assign the case to a different ALJ. *See Rohan,* 98 F.3d at 971 (recommending that administration assign case to a different ALJ where ALJ relied on his own medical findings).